L. M. BAUMANN, Administrator, Plaintiff, Appellant, v. JOHN WILLEMSSEN, Guardian, et al., Defendants, Appellees.

No. 45044.

MAY 7, 1940.

Diamond & Jory, for appellant.

Warren H. White, for Fannie Bonk, appellee.

Meltzer & Vogl, for John Willemssen, appellee.

HAMILTON, C. J.—Fred Bonk died intestate August 24, 1917, a resident of Lyon county, Iowa. He left surviving him his wife, Fannie Bonk, and four minor children, Eilert, Bernice, Aletha and Mae, aged 15, 13, 11 and 3, respectively. He was a farmer and owned, at the time of his death, 400 acres of land in said county encumbered with mortgages totaling $35,000 and also some personal property. Fannie Bonk was duly appointed and qualified as administratrix of the estate on September 8, 1917. She administered said estate, filed her final report, gave due and legal notice to all interested parties and, on March 3, 1919, her final report was approved by the court, she was discharged as administratrix and her bondsmen released. February 21, 1919, Fannie Bonk commenced an action in equity for the sale and partition of said real estate making the children parties-defendant. Proceedings in this partition suit were in all respects regular and in accordance with the statutes of this state. A referee was appointed. The land was appraised at $185 per acre and sold at public sale to Fannie Bonk for $186 per acre, she being the highest bidder, the settlement of the purchase price being made by her assuming the $35,000 indebtedness, taking credit for her distributive share and giving back to the four minor children a note secured by mortgage in the amount of $22,826.86 bearing 5 percent annual interest. On May 6, 1919, the court entered an order approving the referee's report of sale and confirming the sale and approving the deed, all of which appears a matter of record, and the referee was duly discharged. On August 18, 1920, John Willemssen, a brother of Fannie Bonk, was appointed guardian of the property of said minor children. He duly qualified and took possession of the aforesaid note and mortgage and continued to act as guardian during the minority of each of said children until the youngest attained her legal majority. The eldest child, Eilert, also known in the record as Eildert and E. W. Bonk, attained his majority by becoming 21 years of age on April 14, 1923, and thereafter, on May 1, 1924, said guardian made a settlement with said ward, taking from him his receipt for $7,283.34, $5,706.72 thereof repre-

senting his one fourth of the principal amount of the joint $22,826.86 mortgage and $1,576.62 thereof being the accumulated interest thereon. No other money or property belonging to said ward came into the hands of said guardian. Thereafter, on December 26, 1924, said guardian filed his final report and petition for discharge as to said ward, Eilert Bonk. The said ward signed a written waiver of notice of hearing on the final report of said guardian and petition for discharge as to him and, thereupon, the court, on the 29th day of December 1924, entered an order approving said report and discharging said guardian from further duties as guardian of said ward. Final reports were made and filed as the other three children became of age and said guardian was finally discharged with regard to all said wards and the surety on his bond released. Each of the reports constituting settlement between the guardian and the wards were in due form and fully accounted for the respective shares of the four children in the $22,826.86 mortgage with accumulated interest thereon, the report showing that the amounts due the wards were paid to and receipted for by each of them as cash. However, in no instance was any cash money paid to said wards. The reason for this is accounted for by proof in the instant case that, at the time the eldest child, Eilert, became of age and entitled to his money, the guardian in an interview with Fannie Bonk, at which Eilert was present, stated, in substance, that he had no money with which to make settlement with said ward and something would have to be done, indicating that perhaps the land would have to be sold in order to raise the money. It was then suggested by Eilert that, in order to avoid selling the farm, the children turn over to the mother, Fannie Bonk, their interest in the estate and that, upon the coming of age of the youngest child, the mother make a will willing all her property in equal shares to the four children and to this the mother responded that, if that was the way the children wanted it, that was the way it would be. This oral agreement was made between the mother and the children on September 5, 1923. Eilert Bonk was married April 17, 1923, and the first year of his marriage

he and his wife lived with his mother on the farm and the next spring Eilert moved into a new house that had been erected by Fannie Bonk on the same farm and occupied and farmed, as a tenant of his mother, 185 acres from that time until the date of his death, October 15, 1937. At the time of his death, he left surviving his wife, Martha, and five minor children, the eldest of whom was, at that time, 14 years of age. In the meantime, Fannie Bonk had continued to operate the remainder of the farm through tenants and had expended in the neighborhood of $20,000, which she inherited from her father and mother, in improvements on the farm and in reducing the mortgage indebtedness thereon. Everything went along smoothly and without any family friction until after Eilert's death. The question then arose as to what Eilert's wife and minor children should do—whether to remain on the farm or move to town? There was some discussion of this matter between Fannie Bonk and Eilert's wife and her brother and the uncle, guardian of Fannie Bonk's children. The question arose as to how Eilert's wife was to meet his obligations and how she was going to live and provide for her minor children. In these conversations, according to Martha Bonk, she learned for the first time that Eilert had turned over his interest in the estate of his father to Fannie Bonk, and, hence, there would be nothing coming to Martha Bonk out of the estate, her husband having predeceased his mother. Upon examination of the files in the clerk's office, she ascertained that Eilert had receipted for $7,283.34 as cash received. She then made inquiry of the guardian concerning this matter and was told by the guardian that she knew all about the agreement that was made between the children and the mother and that no cash was, in fact, paid to Eilert because of said agreement. This, however, she protested she did not understand and contended her husband had no such understanding. She then employed an attorney and this lawsuit was commenced by the administrator of the estate of Eilert Bonk to recover the $7,283.34 with interest thereon totaling in all $16,004.47, with interest at the rate of 5 percent per annum from May 1, 1938;

asking that the order of discharge of said guardian be set aside and held for naught; for judgment for said amount against John Willemssen and against Fannie Bonk and each of them; that the same be made a lien upon the real estate and for costs, and for general equitable relief, the petition alleging, in substance, that notwithstanding the fact that Eilert was 22 years of age, at the time he signed the receipt for his share, the guardianship had not terminated, that a fiduciary relationship existed between the defendants and Eilert; that he had great faith and confidence in his mother and uncle, the guardian; that he had no independent advice; that the mother and guardian conspired and connived to fraudulently obtain the son's share in the father's estate; that the reports on their face purported to show a cash settlement; that the court was not advised to the contrary and that the defendants thus perpetrated a fraud upon the court and upon said ward. To this, the defendants filed separate answers alleging, in substance, the oral agreement with the mother; the fact that the mother, in compliance therewith, executed her will, which was produced in court, in which she willed all the property in equal shares to her four children; that the estate of Fred Bonk was regularly administered upon and the administratrix discharged by order of court; that the guardian had made his final report and had been fully discharged by order of court; that the land had been sold to Fannie Bonk through the partition proceedings and the sale and deed duly approved by the court and the referee discharged. Copies of the various orders of court, constituting final adjudications, were attached to said answers. It was also alleged that no appeal had been taken from any of said orders and set up the further facts that said Eilert Bonk had full knowledge of all these various transactions; that he had lived on the farm until his death; that he knew of the fact of his mother purchasing the farm and expending large sums of her own money in improving the same and in reducing the mortgage indebtedness; that, after he became of age, the relation of debtor and creditor existed between him and his guard-

ian. There were also pleas of statute limitations and laches, waiver and estoppel.

The pleadings are quite voluminous, but the foregoing con-stitutes the substance of the same. The trial lasted several days and the transcript of the evidence covers over 700 type-written pages which the writer of this opinion carefully read in its entirety. At the conclusion of the trial, the district court, among other things, found as follows:

"(5) That the plaintiff wholly failed to establish either active or constructive fraud as against the said defendants or either of said defendants, and that the evidence and record in this cause affirmatively shows that neither of said defendants in any way cheated, wronged, defrauded or took advantage of the said Eilert Bonk, or his property rights; that the defendants have established each and all of the allegations contained in their answers filed herein and that the equities are with the defendants; * * *

"(8) That no appeal was taken from any of the final judgments and decrees entered either in the matter of the estate of Fred Bonk, deceased, or the partition case or any of the guardianship proceedings aforesaid; that the same became final and are not subject to collateral attack herein; * * *

"(10) That the aforesaid last will and testament of the said Fannie Bonk was made pursuant to and in compliance with the aforesaid agreement had with her four children; that the same was based upon a full, fair and adequate consideration as established by the evidence, testimony and record in this case, which this court thinks was conclusively proved by clear, certain, satisfactory and competent evidence and testimony;

"(11) That * * * having been based upon a full, fair and adequate consideration pursuant to and in compliance with the aforesaid agreement had with her four children, this court now finds that said instrument was, when made, and is now, irrevocable; that said agreement and instrument was, and is binding and enforceable as to all the parties in interest, includ-

ing the said Eilert Bonk, his heirs-at-law, and legal representative;

"(12) That the court specifically finds that when the said Eilert Bonk attained his legal majority and receipted to the said John Willemssen, as such guardian aforesaid, there was created as between the said Eilert Bonk and said defendant, the status of creditor and debtor respectively; and that the alleged cause of action set out in plaintiff's petition did not accrue as against the said defendants, or any of them, within five years next preceding the commencement of this action;

"(13) That the said Eilert Bonk * * * lived about fourteen and one-half years after attaining his legal majority without making any claim of any kind to the defendants for any interest in said property and without having made any effort whatsoever to collect the money for which the plaintiff now seeks a judgment; that in the meantime the valuable property rights of his three sisters, his co-wards, became and are now involved in the subject matter of this controversy, which rights cannot be ignored by a court of equity; and that as a result, the plaintiff is not only barred by the statute of limitations, but by the said Eilert Bonk's failure to make claim therefor during his lifetime, and by his acts and conduct he thereby waived each and every right, if any he ever had, to claim that the defendants, or any of them, were liable to him, as alleged by the plaintiff; and that the said Eilert Bonk, during his lifetime, was not only barred by the statute of limitations of the State of Iowa, but he was guilty of such laches as to estop him from maintaining such an action as is alleged and set forth in plaintiff's petition;

"(14) * * * that the court not only finds that there was no fraud of any kind upon the part of the defendants, or any of said defendants, and that the equities are with the defendants on the merits of said cause as established by the record herein, but that the plaintiff, as a result, is also barred by the statute of limitations of Iowa and is also now estopped by the laches of the said Eilert Bonk from maintaining said alleged cause of action; and that the plaintiff's petition is without merit and

should be dismissed and that the defendants should have judgment for costs.''

Judgment was entered accordingly, the decree providing that the last will and testament of Fannie Bonk be impounded with the clerk of the district court of Lyon county, Iowa, until the death of the said Fannie Bonk. From this decree, plaintiff brings his appeal to this court contending, in substance, · that the trial court erred (a) in finding that there was no fraud; (b) in finding that the order of discharge of the guardian was available as a defense because the record discloses that such discharge was obtained by fraud; (c) that the statute of limitations is not available because of the failure to affirmatively allege and prove that the fraud was discovered by the plaintiff more than five years next preceding the commencement of the action; (d) that the alleged oral agreement was not available as a defense and was improvident and unenforceable; (e) and that the defense of laches, even though the same had been properly pleaded, a fact which is not conceded, was not available as a defense.

Each of these alleged errors is argued separately and a great many authorities cited and the principles of law ably discussed by counsel for appellant and we have given the argument careful consideration and unhesitatingly arrive at the conclusion that there is no law or principle of equity in any of the pronouncements of this court which would warrant us in interfering with the decree of the trial court.

The issue here is primarily one of fact. This is not a case of imposition upon the credulity of the ward, resulting in an unconscionable or inequitable advantage to the recipients of the property. The, thing that was done in the instant case in which the guardian and the mother of the wards were involved was intended for the mutual benefit of the mother and the children. The idea was suggested by this boy, then of full legal age, who was reared on this farm which had been acquired by the joint efforts of his father and mother. The suggestion did not come from the guardian nor from the mother. It

seemed to have been accepted as a satisfactory solution by all concerned. There isn't even a suggestion of the alleged connivance and scheming and conspiring between the guardian and the mother to defraud and wrong her children. Left a widow at the age of 35, Fannie Bonk took up the burden where her husband left off and, apparently, has found her comfort and solace, not in a second husband, for she has never remarried, but in her desire to keep this estate intact for the benefit of her children and, in this, she had the full cooperation of her children. She built a home for Eilert and his young wife with her own money; she established him on a part of this farm with the necessary equipment, livestock, feed and seed to carry on farming operations; her brother, the guardian and uncle of these children, aiding her and them through all the years with his personal attention and labor in many ways, as shown by this record, demonstrated his personal financial disinterestedness by charging nothing for any of his services, time or personal labor in helping his sister or, in his capacity as guardian, even contributing from his own money a portion of the attorneys' fees for the attorneys who represented him as guardian. Through all the years of this guardianship, until the youngest child became of age, the guardian had the assistance of a neighboring banker, a friend of the Bonk family, who aided him in keeping his accounts straight; he was also at all times represented by reputable attorneys in preparing his legal papers in the guardianship matter. As is so often the case in matters of this kind between parents and children, who have abiding faith in each other, attorneys were not consulted or called in to advise or prepare ironclad legal indentures evidencing the understanding and agreement; the oral agreement was talked over between the children and the mother in the presence of the guardian out on the farm. Later, they went to the banker and he drew up the receipts—the waivers of notice—which Eilert and his sister, Bernice, who was also then of age, signed. Before this was done, the banker required that they restate the agreement in his presence. When it came time to draw the will, Fannie Bonk went to the same banker,

who was fully conversant with the whole matter, and, from the evidence, it appears that they each understood that she was bound to draw the will the way it was drawn and executed. Fannie Bonk directed him to keep the will in his possession, which he did until required to produce it at the trial of this case. There is no evidence in this record that Mr. Crawford, the banker, gained any advantage in any way personal to himself or to his bank from the arrangements that were entered into and fully executed; hence, the trial court was right in finding that there was no fraud of any kind. This being true and the property left by Fred Bonk being the property of this mother and her children, they had a right to deal with it and to deal with each other concerning it as they deemed best. Eilert Bonk lived 14 years after the execution of the receipt for his share in the estate. He never questioned the right of his mother to claim ownership in the entire estate. On the contrary, there was evidence that he was fully aware of what had transpired. The other three children were all witnesses at the trial of this case. They have all attained their majority, married and have homes of their own. They all signed similar receipts. They took the witness stand and testified, in substance, that they understood that the children had turned over to the mother all the property and she, in turn, was to will it to them in equal shares; that they received no cash when they signed the final vouchers in the guardianship matter; and they manifested no dissatisfaction as to what had been done. Under the mother's will, Eilert's five children will take his share upon the death of Fannie Bonk. The decree in this case unalteringly binds Fannie Bonk and she has not appealed. The death of Eilert Bonk, prior to the death of his mother, the testatrix, results in Eilert's wife being left in a position to take no part of the devise since Eilert did not die seized of the property devised to him by his mother. No doubt, this unfortunate situation, in so far as the widow of Eilert Bonk is concerned, is the underlying cause of the instigation of the litigation. The facts in the case of Pels v. Stevens, 187 Iowa 443, 173 N. W. 56, mainly relied upon by appellant, are

widely different and easily distinguished from those in the instant case. Without discussing in detail the several assigned errors and without taking up the authorities cited by appellant and discussing the same and pointing out wherein the cases are distinguishable from the case at bar, for we see no useful purpose in so doing, suffice it to say that the trial court was right in finding that there was no fraud established; that the agreement between the mother and the children was established by clear, convincing and satisfactory proof; that it was based upon a valid consideration and has been accepted and acted upon and fully performed; that the children had knowledge of the same, and, although plaintiff's intestate lived many years thereafter, he did nothing to disaffirm the settlement; that the facts constituting the various defenses (statute of limitations, laches, waiver and estoppel) were fully pleaded and established by abundant and satisfactory proof; and that in equity and good conscience the court should not, at this late date, disturb nor set aside said agreement; and that the settlement between the guardian and his wards was in accordance with said agreement and the order of the court approving his final report and discharging him as guardian should not be disturbed or set aside.

It, therefore, follows that the decree of the trial court should be and is affirmed.—Affirmed.

SAGER, HALE, MILLER, BLISS, STIGER, MITCHELL, and OLIVER, JJ., concur.