S. U. BLACK, Appellee, v. CHARLES ESCHER, Appellant.

WATERS AND WATERCOURSES: Surface Waters—Nuisances—
1 Remedies—Injunction. If an injury to the plaintiff by a levee built by the defendant to reclaim land is tangible and definite, the plaintiff is entitled to injunctive relief, even though such relief will defeat the reclamation project of the defendant.

WATERS AND WATERCOURSES: Surface Waters—Nuisances—
2 Remedies—Intangible and Indefinite Damages. Where a levee, constructed by defendant, would merely retard the drainage of flood waters from plaintiff's land, and there had been no increase in the area of plaintiff's land that would overflow by reason of the levee, and since, if an overflow should occur, crops would, in any event, be destroyed by the submerging, the levee will not be enjoined; and where the evidence shows that any damage by reason of holding the flood waters on plaintiff's land for a longer time than they would otherwise remain would be problematical, and the defendant is presumed to be solvent, and can respond in damages, should any be sustained, and, if an injunction issues, is sure to be deprived of the opportunity of producing crops which the levee saves, the injunction should be denied, and plaintiff left to his remedy of law.

APPEAL AND ERROR: Reversal — Improvident Injunction—Dis-
3 missal of Petition with Leave to Renew upon Injury. Where the

appellate court finds that the granting of an injunction is improvident, and that no such extraordinary relief was due, and that the injunction should have been denied, because plaintiff has an adequate remedy at law, it may reverse, with direction to dismiss the petition with leave to renew whenever defendant's levee is causing the plaintiff any actual damages as to water upon his land.

*Appeal from Warren District Court.*—LORIN N. HAYS, Judge.

JULY 1, 1919.

PLAINTIFF alleges that defendant has erected a dam or levee which backs water upon the land of the plaintiff, holds it there longer than it would be there were it not for the alleged obstruction; and that the obstruction has a tendency to spread said waters over lands of the plaintiff that would not be reached by them were it not for the obstruction. He asked and obtained an injunction against the erection of the alleged obstruction, and the defendant appeals.—*Reversed and remanded.*

*Clark, Byers & Hutchinson,* for appellant.

*Berry & Watson,* for appellee.

SALINGER, J.—I. The lands of the parties adjoin. That of the plaintiff is lower than that of the defendant. At and near the line, the defendant has erected a dirt dam, or levee. Under certain conditions, the land of the plaintiff is overflowed, and the water flowing thereon reaches the place where said levee has been erected. Were there no levee at that point, this water would then flow over a depression on the land of the defendant, and into South River. It is conceded—at any rate, the testimony shows overwhelmingly—that the levee in question does not cause the overflow upon the land of plaintiff, and that his land is already completely under water before the water reaches

the point where it would enter said depression, were it not for said obstruction. If, then, plaintiff is entitled to any remedy, it is because the levee holds the overflow waters upon his land longer than they would remain there if permitted to leave through said depression, and because, by holding back the water, the area of plaintiff's overflowed land is enlarged. We gather the trial court finds that the tendency of the levee or dam was to do both those things. The order and judgment is that defendant be enjoined from erecting any obstruction to the free flow of the water at the point where said levee is, and from continuing said obstruction at that point. The question we have is whether the evidence warrants this relief.

Under ordinary conditions, and now, the dam in question is beneficial to the defendant, and is in the interest of good husbandry. It serves to make certain agricultural lands belonging to the defendant available for cropping and cultivation, when they would not be fit for that purpose, or at least would be much less fit for that purpose, if this so-called obstruction were not present. See *Wirds v. VierKandt,* 131 Iowa 125, at 128; *Cubbins v. Mississippi River Com.,* 241 U. S. 691 (36 Sup. Ct. Rep. 671) ; 40 Cyc. 572, 573. Now, of course, we agree with appellee that, while the defendant, and incidentally the world, may be benefited because the act of the defendant makes waste lands productive, such benefit is no justification for an injury to plaintiff. But while this is so, it is a fair inquiry, when the extraordinary process of injunction is invoked upon evidence which fails to show clearly that substantial injury has occurred or will happen, whether the respective benefit and injury do not demand that plaintiff be relegated to his remedy at law, rather than that defendant

1. WATERS AND WATERCOURSES: surface waters: nuisances: remedies: injunction.

2. WATERS AND WATERCOURSES: surface waters: nuisances: remedies: intangible and indefinite damages.

should be deprived of said benefit in order that all injury to the other party may be made impossible. As we have already said, this levee does reclaim farm land. Now, if the injury to the plaintiff is tangible and definite, he may demand that he be saved from it, though to save him will defeat the reclamation project of the defendant. If it be shown that an obstruction erected by the defendant is making waste land, or substantially lessening the production of plaintiff's lands, the defendant may not continue this invasion of plaintiff's rights upon the plea that such invasion is a benefit to himself and to the world at large. The whole case, then, narrows to what, if any, substantial injury has been inflicted upon the plaintiff by the reclamation project of the defendant. It is only under rather exceptional conditions that the land of plaintiff is overflowed at all. No one may be sure that these conditions will arise in future, and, if so, how frequently. Should they arise, the lands of the plaintiff will be overflowed whether this levee be present or absent. The case of the plaintiff, then, rests upon the proposition that, even if defendant had not obstructed, the land of plaintiff *may* be overflowed in the future; that, in such event, the levee may hold the water upon his land for a longer time than it would stand there were it not for the levee; and that the levee would cause this water to spread over lands of his that might otherwise not be covered. We start out with the self-evident proposition that, in so far as there is no increase in the area, the levee will cause defendant no definite or substantial damage, even if an overflow should occur, because whatever crops might be present upon the overflowed land would be submerged without the aid of the dam. True, there remains the claim that the overflows that may occur in future may, by means of the levee, cover additional land. When the evidence is given proper analysis, it appears at once that these claims of potential injury are most vague-

ly supported. It is as well stated by appellee as it is any-
where. In his argument, it is said that it is immaterial
how large the benefit may be to defendant, if the plaintiff
has made out a case of showing that the maintenance of the
levee will cause him *substantial* injury. There is no pre-
tense at proving that the alleged obstruction has already
caused such injury. It may be assumed there is testimony
tending to show there have been floods since the levee was
put in. But the question remains whether there is substan-
tial evidence that any floods are threatened which will put
the plaintiff into a substantially worse position than he was
in before the levee was constructed.

II. There is no dearth of testimony which deals in
generalities, and which declares that, should there be a
flood of sufficient gravity, water will, to some extent, recede
more, slowly than it would if the levee were not present,
and that the area of the overflowed lands would, to some ex-
tent, be increased. But there it stops. The defendant tes-
tifies that the land of the plaintiff has been under water to
the depth of four feet, before the alleged obstruction was
placed, and that, if there is a crop, covering the land with
that amount of water ruins the crop. Nowhere do we find
an approach in testimony as to how much the water in future
floods would be deepened because of the erection of this
obstruction, or that the water that would come upon plain-
tiff's land without the aid of the levee would not ruin plain-
tiff's crops. There is testimony tending to show that the
increased slowness in recession and the possibilities of the
enlargement of the overflowed area would cause plaintiff no
damage. But we pass that, and recur to the inquiry wheth-
er the plaintiff has shown by a preponderance that he will
suffer any definite or tangible injury through the act of the
defendant—whether we may find from the testimony that
there will be future overflows which will damage the plain-
tiff because the levee holds water on his land for an in-

creased length of time, and covers more of his land. A few selections must suffice, and are typical. The defendant testified:

"Where I am claiming this damage, I didn't get any corn. Q. I am asking you about the northwest corner. A. I think I claim damages back in where we claim it raises higher back in there."

The witness Brown did not go beyond saying: "I would think it would raise the water on Mr. Escher's land, and Black's, too." Other witnesses say that this levee would increase the amount of water held in case of overflow, and increase its depth and the length of time the water would remain on the land (Van Sandt). The witness Art says he thinks the effect was to back water onto Black's land, and if the levee had not been there, "I think some of the water would have taken a northeasterly course;" and if the water got to the top of that levee, "it would back up quite a ways on Black's land;" and that, in the opinion of the witness, he would consider that would be a damage; that it would put the water back "on all of the forty next to Escher's." Mr. Black says that, when there was no levee, very little of his land would be overflowed, "when the water first began to overflow." But he does not attempt to say how this has been changed by the erection of the levee, or how much more would now overflow, nor does he deny that all overflow would be complete before the water rose sufficiently to reach the point where this obstruction is. There is much more testimony to the general effect that, in the opinion of the witnesses, the water would pass off more rapidly if the levee were not there, and that, to some extent, not specified, the area of the overflowed lands belonging to Black would be increased. All attempts to make this definite failed. The witness Parsons, who had given some of these opinions, was asked, "Can you give any idea how many feet or inches the water would have to be

up on this levee to raise an inch on Mr. Black?" and he answered, "I don't know anything about that." The witness Freeman was asked, "Have you seen the effects of the levee on your land and on that land in that general locality?" and he answered, "Of course, I can't say positively that it does." Mr. Van Sandt was asked:

"Q. It would not make an hour's difference? A. I don't know anything about the time. I have no way of determining the difference in time in which the water would get off when the levee was there, and the time it would take to get off if the levee were not there." He added "I have no way of estimating what, in acreage in gross, the amount there of Mr. Black's land would be affected, but I know there is some."

The witness Parsons was asked:

"Q. Before the water would get out when South River would raise and back up the branch, about how much of what is now Mr. Black's land would be overflowed and under water? A. That is a pretty hard question to answer satisfactorily, but there wasn't a very big proportion of it overflowed until the water began to go through this depression."

One witness was asked to say whether he could give an idea about as to the number of acres that would be overflowed "at that time," and answered:

"Well, now, I never took the level, and I don't know just how much, and no one can say; of course, there is lots more overflowed; it would be high there, and it would go over lots more, for it would be level—like ground."

2-a

When it comes to establishing substantial injury because land which will overflow at all events, without an act of the defendant's, will retain the overflow longer, and that such overflow will spread over more ground, there is inherent danger that the testimony will be vague and incon-

clusive, and that finding damage will entertain elements highly speculative. In just such a case as this, it was said in *Way v. Roddy,* (Tex.) 140 S. W. 1148:

"The probable damage, as estimated by appellant's witnesses, is mere speculation, and not based upon any positive facts known to the witnesses as to justify their conclusion."

That applies well, here. Enough has been said to show that it is problematic what damages, if any, the plaintiff will suffer in future. He is presumed to be solvent, and can respond in damages, should any be sustained. If this injunction stands, the defendant is sure to be deprived of the opportunity of producing crops which the levee saves. If the injunction stands, he may so be deprived, and the world with him, although the levee may never harm the plaintiff, and though, if it should, plaintiff can be made whole on the law side.

To warrant an injunction, there must be a substantial increase in the flow,—another way of saying that there must be substantial injury. See *Schrope v. Trustees,* 111 Iowa 113. In *Way v. Roddy,* (Tex.) 140 S. W. 1148, it is conceded that the owner of land situated near a stream cannot lawfully construct an embankment that turns the water of an overflow of such stream upon the land of another, if such turning injures that other. The controlling question was whether, under this rule, evidence that an embankment constructed by appellee shows such injury to appellant as authorizes the injunction sought. It is held that it did not justify it. One principal reason for so holding is thus stated:

"Appellant's land is lower than appellee's, and overflows before the water reaches appellee's. On appellant's 85-acre tract, beginning about 700 feet north of his south line, is a swale, or low depression, which extends north past the point at which the north line of the levee is in-

tended to cross. An overflow first gets on appellee's land by backing up this low depression from the north, after appellant's land is under water. The effect of the levee would be to deepen the water on appellant's land, not exceeding six inches in the highest flood, which would not materially injure the land of appellant. We conclude that the evidence fails to show that the construction of the levee will cause such material damage to appellant's land as to warrant the writ of injunction."

The case of *Crawford v. Rambo,* 44 Ohio 279 (7 N. E. 429), gives some support to the *Roddy* case, and is, in some minor aspects at least, along the same lines; and in some aspects, the *Roddy* case is sustained by *Wirds v. VierKandt,* 131 Iowa 125, and *Matteson v. Tucker,* 131 Iowa 511.

We find little applicability in *Sheker v. Machovec,* 139 Iowa 1, or in *Keck v. Venghause,* 127 Iowa 529.

We cannot agree that *Troe v. Larson,* 84 Iowa 649, establishes equity should take cognizance of the claim of this plaintiff. It is true we therein recognized that injunction will lie to prevent a multiplicity of suits; that, in granting the remedy, the court is not governed by questions of a pecuniary value, but will remedy and prevent an injury which it may be reasonably supposed would materially lessen the enjoyment of property by its owners; and that, where a mandatory injunction is granted to remove a dam erected across the outlet of a lake by an abutting proprietor, the effect of which is to raise the water of the lake above its natural level, and results in the continued overflow of the lands of the other abutting proprietors, injunction will lie because it cannot be told to what extent the injury will extend, how long the damage would be maintained, nor told when the rights of plaintiff can be determined by resort to an action at law, because all the matters are of so much uncertainty and of probable litigation that equity and justice demand a speedy and conclusive de-

termination of the question. We recognized, further, that courts of equity have long taken cognizance of actions for backflowage of water, the obstruction of watercourses, and the diversion of streams. But let it be noted that, in that very case, we said:

"That the dam raises the water in the lake above the natural height, or that to which parties have a legal right to maintain it, resulting in a damage to the plaintiff by the overflow of his land, is not, to our minds, a doubtful question. * * * It is likely the effect of the dam is to raise the water from 12 to 16 inches above what it would be if 'the bottom of the log was the height of the bed of the channel. There is some evidence tending to show that the ground where the ends of the log rest is higher than the ground between, and that water would, if not obstructed, run under the log. Considerable uncertainty attends the finding of such facts from the evidence; but our conclusion is, upon the record, that, if the channel of the outlet should be kept at the height of the bottom of the log, it would best protect the rights of all parties."

The *Troe* case is not an authority for appellee. It does not hold that the extraordinary remedy of injunction should be granted where it is uncertain that an obstruction can or will cause any *substantial* damage, but that it lies where it is uncertain whether there is an effective remedy at law for a damage which is certain, and where there will be occasion to apply to the law for redress many times to compensate for certain damage. That equity will act where it is uncertain that certain damage can be adequately redressed is quite different from allowing an injunction where it is uncertain there will be anything to redress.

And the *Troe* case sustains that no relief should go beyond what will save the complainant, without injury to the obstructor. It modifies the injunction. It holds that less than complete prohibition will suffice, because the de-

cree would not permit a reconstruction of the dam, "but would prevent any dam or obstruction in the outlet. It is possible that the bed of the outlet is not lower than the bottom of the log, and, if not, the removal of the dam would effect the desired purpose." And it is ordered that "the decree should be so modified as to not prevent the bed of the outlet from being kept at the designated height,—that is, the height of the bottom of the log."

It is our conclusion that the granting of injunction at bar is improvident; that no such extraordinary relief was due; and, what is another way of saying the same thing, the injunction should have been denied be-

3. APPEAL AND ERROR : reversal : improvident injunction : dismissal of petition with leave to renew upon injury.

cause plaintiff has an ·adequate remedy at law. But we are not called upon to go so far as to annul the injunctive writ. The appellant himself has set the limits to his own relief. In his argument, he says:

"A proper order in this case would be to reverse, with direction to dismiss the petition, with leave to renew whenever defendant's levee is causing the plaintiff actual damages."

It is accordingly so ordered, and the cause remanded, with direction to dismiss the petition upon said terms. —*Reversed and remanded.*

LADD, C. J., EVANS and PRESTON, JJ., concur.