# JOHN H. ANDERSON AND OTHERS v. ST. PAUL CITY RAILWAY COMPANY.[1]

May 19, 1922.

No. 22,867.

**Street railway — action to restrain collection of illegal fare.**

1. While it is probably true that private users of transportation facilities furnished by a street railway company cannot maintain an action to fix the rate of fare or to determine the reasonableness of the rate charged, yet, if the street railway company is exacting a higher rate than is permitted by existing law, such users may maintain an action to restrain the company from enforcing more than the lawful rate.

**Right of company to collect fares not affected by Act of 1921.**

2. Chapter 278, Laws of 1921, authorizes defendant to charge the rates authorized by its prior franchise until such rates are changed by the Railroad and Warehouse Commission, and becoming subject to that act did not take from defendant the right given by its former franchise to collect a fare from every passenger over any part of its railway, and collecting a fare from interurban passengers, to or from the so-called midway district is lawful, although no such fare had been collected before defendant became subject to the act.

Plaintiffs in behalf of themselves and others similarly situated brought an action in the district court for Ramsey county to enjoin defendant street railway company from collecting from passengers in the so-called neutral zone, fares additional to those collected prior to January 7, 1922, until authorized to do so by the Railroad and Warehouse Commission. Plaintiffs' motion for a temporary injunction was denied by Catlin, J. From the order denying their motion for a temporary injunction, plaintiffs appealed. Affirmed.

*O'Brien, Stone, Horn & Stringer,* for appellants.

*W. D. Dwyer,* for respondent.

*A. F. Nelson, C. F. McNally* and *Eugene O'Neill,* filed a brief of the city of St. Paul as amicus curiae.

[1]Reported in 188 N. W. 286.

TAYLOR, C.

A brief outline of the conditions which led to this action may aid in understanding it.

The St. Paul City Railway Company has constructed and is operating a system of street railways in the city of St. Paul under authority conferred upon it by various ordinances of the city which authorize the company to collect a fare of 6 cents from each passenger riding on its railway. The Minneapolis Street Railway Company has constructed and is operating a system of street railways in the city of Minneapolis, under authority conferred upon that company by various ordinances of the city of Minneapolis which authorize that company to collect a fare of 6 cents from each passenger riding on the railway of that company. Formerly a space of several miles intervened between the street railways of the two companies, but the two cities now adjoin and four interurban street railway lines have been established over which cars are run from points in one city to points in the other. With the exception about to be noted, a passenger riding from any point in one city to any point in the other has always been required to pay one fare to defendant for that part of his ride within the city of St. Paul and another fare to the Minneapolis Company for that part of his ride within the city of Minneapolis. Three of the interurban lines cross the so-called midway district which, for the purposes of this case, may be described as that portion of the city of St. Paul lying west of Snelling avenue and between that avenue and the east boundary of the city of Minneapolis. This district is several miles in length and varies from about one mile to more than two miles in width. It lies wholly within the city of St. Paul, but prior to January 7, 1922, only one fare was charged for transportation either to or from any point in this district and any point in either city, and for this reason it became known as the neutral zone.

Both the St. Paul City Railway Company and the Minneapolis Street Railway Company have elected to come under and be governed by chapter 278, p. 328, of the Laws of 1921, entitled: "An act relating to street railways," and approved April 14, 1921. This act, among other things, confers upon the State Railroad and Ware-

house Commission power to fix and regulate the rates of fare to be charged by the street railway companies that elect to come thereunder, and to make a valuation of street railway property to aid it in determining what rate will yield a reasonable return to the company. The defendant applied to the commission for authority to increase its rate, and for authority to establish an emergency or temporary rate pending a valuation of its property and the establishment of a permanent rate based upon such valuation, as provided in the act of 1921. After a hearing on this application, and on August 29, 1921, the commission made an order authorizing defendant to charge 7 cents for cash fares and 25 cents for 4 tickets pending the investigation to be made by the commission. The city of St. Paul appealed to the district court from this order, and on December 28, 1921, the district court made an order vacating the order of the commission. One of the findings of fact made by the district court upon which its decision was based in part is as follows:

"The Railway Company is not collecting, and for a long period heretofore has not collected, all the passenger fares lawfully collectible and which since April 14, 1921, are expressly required by law to be by it collected by reason of the maintenance by said company of the so-called neutral zone, wherein and wherefrom an increase of from $250,000 to $300,000 per annum should be made in its gross operating revenue."

This finding was based on the fact that only one fare was collected from passengers riding between any point in the city of Minneapolis and any point in the midway district. Immediately after the rendition of this decision, defendant gave notice to the effect that from and after midnight of January 7, 1922, the privilege of riding between points in the midway district and points in the city of Minneapolis for one fare would be withdrawn, and that thereafter a fare would be collected from all persons riding over any portion of its railway. Since that date defendant has collected a fare from each passenger to or from the city of Minneapolis whose transportation began or terminated within the midway district as well as from

those passengers over its railway whose transportation began or terminated outside that district.

Plaintiffs, alleging that they were residents of the midway district or engaged in business therein, promptly brought this action on their own behalf and on behalf of all others similarly situated, to enjoin defendant from collecting from passengers to or from the midway district any other or greater fare than had been collected from such passengers prior to January 7, 1922, until duly authorized to do so by the Railroad and Warehouse Commission. Upon the complaint and numerous affidavits showing that many industrial plants and other institutions and many homes had been established in the midway district, and that the privilege of street car service to any part of either city for one fare had been one of the inducements for selecting that location, plaintiffs applied to the district court for a temporary injunction. The application was denied and plaintiffs appealed.

It is contended that, as plaintiffs are merely private users of the transportation facilities furnished by defendant, they cannot maintain this action and St. Paul B. & S. Co. v. St. Paul Gas Light Co. 130 Minn. 71, 153 N. W. 262, L. R. A. 1918A, 384, Ann. Cas. 1116B, 286, and other similar cases from other jurisdictions are cited in support of this contention. If this were an action to fix the rate, or to determine the reasonableness of the rate charged, these decisions would doubtless be in point and the contention well founded. See extended note in 12 A. L. R. 404. Plaintiffs do not contend to the contrary. They base their action on the claim that defendant is exacting a charge not permitted by existing law. If this be true, if defendant, a public service company, is exacting from its patrons a higher rate for the service which it furnishes them than is permitted by existing law, we think the users of such service may, under the circumstances disclosed in the record, maintain an action to enjoin defendant from enforcing the payment of more than the lawful charge. This brings us to the question whether defendant is in fact collecting from midway passengers more than the law authorizes it to collect.

Plaintiffs concede that under the ordinances under which defendant was operating until it came under the provisions of chapter 278 of the Laws of 1921, defendant had the right to withdraw the special privilege accorded midway passengers and to charge and collect the fares which it is now collecting. Section 8, p. 333, of chapter 278 of the Laws of 1921 provides:

"The rates which the street railway is authorized to charge and collect under existing franchises shall be and remain the authorized and lawful charge until a rate is fixed by the commission under the provisions of this act."

Plaintiffs rest their contention on the proposition that this provision requires defendant to continue in force the same rates which it had previously charged until the commission authorizes a change.

The language of the statute is clear and explicit and we are unable to give it the meaning contended for by plaintiffs. The statute makes no reference to the rates theretofore *actually* charged. It provides that the rates which defendant was *"authorized* to charge" under its prior franchise "shall be and remain the authorized and lawful charge until a rate is fixed by the commission." In other words, a rate which would be lawful under the franchise existing when the act went into effect, continues to be lawful until changed by the commission. That the ordinances, under which defendant was operating when the act became effective, gave defendant the right to charge and collect the rates which it is now collecting, is not questioned by any one, and it necessarily follows from the statute that defendant still has the right to charge and collect such rates. As defendant is collecting from passengers no more than it is authorized to collect, plaintiffs are not entitled to the injunction asked for.

The city of St. Paul has filed a brief in which the city asserts that the reduced rate at which passengers to and from Minneapolis were formerly transported in the midway district constituted an unlawful discrimination in favor of that district and those passengers, as against other parts of the city and other passengers. The defendant makes the same claim and asserts that for that reason the former rate cannot be reinstated. It would be improper to pass upon this

question here, as there is no need to determine it in deciding the present case, and neither the city nor any representative of the general public is a party to this action. The order appealed from is affirmed.

BROWN, C. J. (dissenting.)

The construction given section 8 of the Brooks-Coleman Act, in my view of the statute taken as a whole, does not express the real intent and purpose of the legislature in its enactment. The construction is perhaps consistent with the technical letter of the section, though that is not conceded, but not in accord with the general purpose of the reservations there expressed. The outstanding purpose of the act was to transfer to the State Railroad and Warehouse Commission the entire control and supervision of the street railway companies affected; thus to bring to an end almost constant and continuous disputes and controversies in respect to street car regulations arising from local conditions in the cities of St. Paul, Minneapolis and Duluth; and to preserve and protect all rights of the public until such time as the new authority, the Railroad and Warehouse Commission, should be called upon to act in matters proper to come before it, particularly the rates of fare to be charged, it was declared by section 8 that rates theretofore authorized under the car company franchises should remain in force until changed or modified by the commission; the manifest purpose being to continue the status quo until the commission should authorize a change. No such upheaval as here disclosed was in contemplation by the legislature at all.

The so-called neutral zone in which a one fare rate from points therein to and from Minneapolis is extended to those taking passage on or leaving cars within the zone was voluntarily established by the defendant many years ago, and has since been maintained without question from any lawful source, it has served a practical public purpose and the right of the company to maintain it received the implied if not the express sanction of the authorities of the city of St. Paul. Originally the zone was limited to Prior avenue, but was later extended to Snelling avenue, and since 1905 has been maintained at that point mainly in the interests of the general public outside

the zone limits and in response to a demand for equal opportunity of access to the Minnesota Agricultural Fair Grounds, situated in the midway district, from St. Paul and Minneapolis.   The creation of the zone with its attendant fare limit, though not expressly authorized by the city of St. Paul rate making authority, was sanctioned and approved by that authority during all the years it has been in force and at no time called in question.   It follows from that situation that the fare so fixed and established, and so long maintained for the zone district, was "authorized" within the meaning of the section 8 of the Brooks-Coleman Act, and after the passage thereof unchangeable by the street car company without authority from the commission.

The contention of counsel for the car company that the zone rate is discriminatory, a violation of law, and therefore illegal, in my judgment is clearly without merit.   The rate charged within the zone is no more of an objectionable discrimination than we find outside the zone, illustrated by the position of two persons who board a street car at Robert and Seventh streets in St. Paul, the destination of one being 10 blocks away; the destination of the other Fort Snelling, 10 miles away, each paying the same fare.   That does not constitute discrimination in a legal or objectionable view, though from the standpoint of the service rendered by the car company there is discrimination in fact, and that relatively is the situation presented in the zone territory.   St. Paul Assn. of Com. v. Chicago, B. & Q. R. Co. 134 Minn. 217, 158 N. W. 982.

The creation and maintenance of the zone has served a general public purpose, unobjectionable to the law, and the Brooks-Coleman Act construed from a practical view-point, rejecting the technical letter of section 8 (3 Dunnell, Minn. Dig. § 8940), contains no suggestion of a legislative intent to authorize the abolition thereof by the voluntary action of the car company.   It should therefore remain in force and effect, as declared by section 8, until the Railroad and Warehouse Commission, in connection with such order in the premises as may be deemed just to the company as well as to the public, shall otherwise direct.

"The letter of the law killeth; the spirit keepeth alive."

QUINN, J. (dissenting.)

I concur in the dissent of the Chief Justice.