W. Lawrence OLIVER, Appellant,

v.

IOWA POWER & LIGHT COMPANY, Appellee.

No. 54253.

Supreme Court of Iowa.

Feb. 9, 1971.

688

W. Lawrence Oliver, pro se.

Duncan, Jones, Riley & Davis, Des Moines, for appellee.

UHLENHOPP, Justice.

The question presented is whether plaintiff is required to exhaust an administrative remedy before instituting this independent accounting suit for alleged overcharges for electricity.

In his amended petition, plaintiff alleges he previously paid defendant $12 to $15 per month for electricity used in his home. He built a new home on Rural Route 1, Des Moines, Iowa, and thereafter paid defendant $30 per month for substantially the same amount of electricity. He alleges "Defendant has grossly overcharged him for electric power, and has overcharged all of those in his same class". He asks an accounting for himself and for those similarly situated and says the approximate amount defendant owes is $2,000,000.

Defendant moved to dismiss the petition on the ground plaintiff did not exhaust his administrative remedy before the Iowa State Commerce Commission.

Plaintiff resisted the motion, alleging he complained to the commission, and the commission wrote a letter to defendant about the complaint. Plaintiff further alleged defendant responded to the commission that plaintiff had moved to a rural area where the average distance between houses is more than 200 feet, that plaintiff's rate is governed by the filed tariff entitled "Residential Service Rate 104 Zone 2 Rural", but that the area was being taken into an incorporated town so plaintiff's rate would soon be reclassified to "Rate 102 Zone 2 Urban". Plaintiff continued his allegations saying that upon the commission's receipt of defendant's response, the commission replied to plaintiff, "It appears that the utility has answered your complaint and that the rate you desire will be available in the very near future; however, if you have further questions regarding this matter, please contact this office."

In this state of the pleadings, the trial court sustained the motion on the ground that plaintiff did not exhaust his administrative remedy. Plaintiff appeals.

Defendant's contention that plaintiff did not exhaust an administrative remedy poses two questions: Does an administrative

remedy exist for the claimed wrong? Is that remedy exclusive?

I. *Does an Administrative Remedy Exist?* The first question involves the Iowa statute regulating public utilities, Code, 1971, chapter 490A. ·Before examining that statute, the general law on actions to recover payments to utilities must be noticed, as well as the specific allegations of plaintiff's petition.

■ Plaintiff's action. involves alleged overcharges for electricity. Two principal kinds of action of this type exist. In the first kind, the customer of the utility does not claim that the rates were unreasonable but claims he was charged the wrong amount—e. g., his meter was misread, the charge exceeds the filed tariff, or he was placed in the wrong rate class. The doctrine of "public utility duress" has evolved in such cases, allowing the customer to recover his overpayments and to have other relief, in an action in court. 25 Am.Jur.2d Duress and Undue Influence § 8 at 364; 40 Am.Jur. Payment § 178 at 837; 38 C.J.S. Gas § 36 at 724. Numerous illustrations are collected in Annotation, 34 A.L.R. 185.

■ In the second kind of action, the customer seeks to recover overcharges on the ground that the utility's rates were unreasonable. These actions the courts will not entertain. The customer must proceed before the appropriate public utility regulatory body to have reasonable rates determined for the future; the utility's filed tariffs govern rates for the past. Cases of this sort are Montana-Dakota Util. Co. v. Northwestern Public Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, and Spintman v. Chesapeake & Potomac Tel. Co., 254 Md. 423, 255 A.2d 304. See also Annot. 12 A.L.R. 404.

The distinction is brought into focus by comparing Anderson v. St. Paul City Ry., 152 Minn. 213, 216, 188 N.W. 286, 288, with the Montana-Dakota case, supra, 341 U.S. at 250–252, 71 S.Ct. at 695, 95 L.Ed. at 918–919. In Anderson the court, after referring to cases denying recovery for unreasonable rates, said:

"If this were an action to fix the rate, or to determine the reasonableness of the rate charged, these decisions would doubtless be in point and the contention well founded. See extended note in 12 A.L.R. 404. Plaintiffs do not contend to the contrary. They base their action on the cláim that defendant is exacting a charge not permitted by existing law. If this be true, if defendant, a public service company, is exacting from its patrons a higher rate for the service which it furnishes them than is permitted by existing law, we think the users of such service may, under the circumstances disclosed in the record, maintain an action to enjoin defendant from enforcing the payment of more than the lawful charge."

On the other hand, in the Montana-Dakota case, where the customer happened to be another utility, the Court said:

"It is admitted, however, that a utility could not institute a suit in a federal court to recover a portion of past rates which it simply alleges were unreasonable. It would be out of court for failure to exhaust administrative remedies, for, at any time in the past, it could have applied for and secured a review and, perhaps, a reduction of the rates by the Commission. * * * We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only one or the more reasonable one."

The two situations are commented on in Spintman v. Chesapeake & Potomac Tel. Co., 254 Md. 423, 428–429, 255 A.2d 304, 307:

"Where an administrative remedy is available, such as a hearing before the Public Service Commission, to determine the reasonableness of a rate, prior resort to that remedy is a necessary prerequisite to a standing before the courts. * * *

\* \* \* \* \* \*

"In the instant case, we are not confronted with a situation where the consumer was charged a rate not in conformity with the established and published tariff set by the Commission or where there was error in the computation or application of the established rate. In such a situation an action in assumpsit may well be the proper remedy for the collection of the overcharge."

These authorities make clear that if the present action is predicated on a claim that defendant's rates were unreasonable, plaintiff does not have a case here. We may therefore place consideration of that basis of recovery aside and confine ourselves to whether plaintiff has stated a case based on a claim he was charged the wrong amount.

The other preliminary matter is one of pleading—whether plaintiff's petition covers a claim based on charges for wrong amounts. He alleges he previously paid $12 to $15 per month for electricity but paid $30 monthly after he moved to his new home. This lends some credence to the view that he is claiming he was charged the wrong amount in the second home. Moreover, his allegation in the petition is general—"Defendant has grossly overcharged him for electric power". The expression, "gross overcharge," obviously is broad enough to include a wrong amount.

Defendant did not move for more specific statement or take discovery in order to nail down the basis of plaintiff's claim. In this respect the case is somewhat analogous to those in which the petition charges negligence generally; such a petition is subject to a motion to make specific, but if no such motion is made, any negligence proved can be relied on under the general charge. Hanen v. Lenander, 178 Iowa 569, 160 N.W. 18. We think plaintiff is in a position to claim, so far as his petition is concerned, that he was charged a wrong amount.

Turning to our statute, in this jurisdiction public utilities are regulated at the state level. The regulatory agency is the Iowa State Commerce Commission. Code, 1971, ch. 490A. Defendant comes under that statute. § 490A.1. Utilities file their initial tariffs with the commission but the commission may investigate the tariffs and change them if they are not reasonable. §§ 490A.3–490A.5, 490A.7. A utility can change tariffs only after a commission proceeding. § 490A.6. Pending completion of such a proceeding, the utility can place new tariffs in effect under bond to the extent permitted by § 490A.6, subject to refunds "in a manner to be prescribed by the commission". § 490A.7. Section 490A.5 provides that "No public utility subject to rate regulation shall directly or indirectly charge a greater or less compensation for its services than that prescribed in its tariffs \* \* \*."

The provision pertinent to our inquiry is § 490A.3:

"Every public utility shall furnish reasonably adequate service at rates and charges in accordance with tariffs filed with the commission. Whenever there is filed with the commission by any person or body politic, or filed by the commission upon its own motion, a written complaint requesting the commission to determine the reasonableness of the rates, charges, schedules, service, regulations, or *anything done or omitted to be done by any public utility subject to this chapter, in controvention of the provisions thereof,* such written complaint thus made shall be forwarded by the commission to such public utility, which shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the commission. If such public utility shall not satisfy the commission with respect to the complaint within the time specified and there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the commission to promptly initiate a formal proceeding. Such a formal proceeding may be initiated at any time by the commission on its own motion. Whenever such a proceeding has

been initiated on application or motion, the commission shall set the case for hearing and give such notice thereof as it deems appropriate. Whenever the commission, after a hearing held after reasonable notice, finds any public utility's rates, *charges*, schedules, service or regulations are unjust, unreasonable, discriminatory or otherwise *in violation of any provision of law*, the commission shall determine *just*, reasonable, and nondiscriminatory rates, *charges*, schedules, service or regulations *to be thereafter observed and enforced."* (Italics added.)

Does the statute provide an administrative remedy for wrong amounts charged a customer? Section 490A.5 prohibits a utility from deviating from filed tariffs, and § 490A.3 permits proceedings before the commission for "anything done or omitted to be done by any public utility subject to this chapter, in contravention of the provisions thereof".

■ On this first part of the case, we conclude an administrative remedy plainly does exist for a complaint based on a wrong amount charged a customer.

■ II. *Is the Administrative Remedy Exclusive?* The second question is really a problem of whether primary administrative jurisdiction exists rather than a problem of whether the administrative remedy was exhausted, although those two doctrines are closely related. Note, 51 Harv.L.Rev. 1251, 1260–61. If an adminstrative agency has "primary" or "exclusive" jurisdiction of a controversy, then the administrative remedy ordinarily must be exhausted before resort may be had to the courts. 2 Am.Jur.2d Administrative Law § 595 at 426, § 788 at 688; 73 C.J.S. Public Administrative Bodies & Procedure § 40 at p. 347, § 41 at p. 351.

■ Whether a particular administrative proceeding is primary depends on the statutory scheme. "The doctrine applies where the statute provides for an administrative remedy, even though in general terms, even though the terms of the statute do not provide for 'exclusive jurisdiction' or make the exhaustion of the remedy a condition of the

right to resort to the courts, and even though no appeal to a judicial tribunal is provided for in case of rejection of the administrative remedy or the statute declares the administrative determination shall not be subject to judicial review. * * * On the other hand, the doctrine of exhaustion of administrative remedies does not apply where, by the terms or implications of the statute authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to allow the judicial remedy even though the administrative remedy has not been exhausted." 2 Am.Jur.2d Administrative Law § 598 at 432–33. See also Morrison-Knudsen Co. v. Iowa State Tax Comm'n, 242 Iowa 33, 44 N.W.2d 449; 73 C.J.S. Public Administrative Bodies & Procedure § 40 at p. 350.

■ One test of exclusiveness is whether the administrative remedy is adequate. Inadequacy of that remedy to provide the relief to which the litigant would otherwise be entitled constitutes some indication that the remedy is not exclusive and that an independent action in court can be maintained. Goldstein v. Groesbeck, 142 F.2d 422, (2nd Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590. "The primary jurisdiction doctrine does not apply to require prior resort to an administrative agency when the relief sought is not within the jurisdiction of the agency, or the question is one which the agency has no power to decide, even though it may consider such question in reaching a determination which is within its jurisdiction." 2 Am.Jur.2d Administrative Law § 794 at 698. See also 73 C.J.S. Public Administrative Bodies & Procedure § 40 at p. 350, § 41 at p. 354, § 43 at p. 359 (whether the agency has jurisdiction "to afford adequate remedy"). Stated negatively, the test is whether the agency "is powerless to afford relief in the face of * * * the provisions of the governing statute." 2 Am.Jur.2d Administrative Law § 605 at 441–42.

As seen, traditionally a person charged a wrong amount by a public utility has a cause

of action in court. Does our public utility statute now require the person to go to the commission instead? Section 490A.6 authorizes the commission to prescribe the manner of refunding overcharges collected under bond during proceedings to fix rates, but this case does not involve a rate proceeding. Plaintiff's claim, so far as the administrative remedy is concerned, comes under § 490A.3 for "anything done or omitted to be done" by a public utility subject to the chapter, "in contravention of the provisions thereof". But § 490A.3 provides no machinery and grants no authorization to the commission to require reparation by a utility for wrong amounts charged. That function is apparently left to the courts as before, for the chapter contains no intimation that a person's substantive right to recover past payments of wrong amounts is abrogated. The statute provides as to the administrative proceeding that "the commission shall determine * * * charges * * * to be *thereafter* observed and enforced." § 490A.3 (italics added); cf. Alfredo M. Apodaca and Other Customers of El Paso Electric Co., Utilities Law Reports-State (C.C.H.1970) ¶ 21,406.03.

■■■ As to payments of wrong amounts, we think the administrative remedy is not sufficiently adequate to be primary. The courts remain open to such suits. Cf. Louisville Gas & Elec. Co. v. Dulworth, 279 Ky. 309, 130 S.W.2d 753; Bee's Old Reliable Shows v. Kentucky Power Co., 334 S.W.2d 765 (Ky.); 73 C.J.S. Public Administrative Bodies & Procedure § 40 at p. 350 ("The doctrine [exhausting administrative remedies] is not applicable where the issue, regardless of its complexity, is not the reasonableness of a rate or rule, but a violation of such rate or rule."). The present case does not involve utility "service," for which the administrative remedy is in fact exclusive. Elk Run Tel. Co. v. General Tel. Co., 160 N.W.2d 311 (Iowa); Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co., 165 N.W.2d 771 (Iowa).

■■■ Our conclusion means that a person who believes he has been charged the wrong amount has two avenues open. If he does not want a lawsuit and merely wants the amount corrected prospectively, he can informally complain before the commission or institute formal proceedings there. § 490A.3. The statute and the commission appear to have retained both informal and formal proceedings, as practiced by the predecessor Board of Railroad Commissioners. Rules 2, 3, 15.3, 15.4, Rules of Practice, Iowa State Commerce Comm'n, 1966 I.D.R. 73–74, 119–20; Note, 51 Iowa L.Rev. 385, 395–96 (numerous informal complaints processed without necessity of notice or hearing). If the person proceeds before the commission by informal complaint only, as plaintiff did here, we are clear that neither he nor the utility is bound in an independent court suit, such as this one, by the result before the commission. Whether the person and the utility would be bound in court by a commission order after formal proceedings on notice and hearing, query. See 2 Am.Jur.2d Administrative Law § 497 at 307–308; 73 C.J.S. Public Administrative Bodies & Procedure § 147 at p. 480–482. That question is not before us.

■■■ But if a person wants to recover past payments of wrong amounts, he can institute an independent court suit like the present one, and he may do so without pursuing any proceedings before the commission.

The motion to dismiss must be overruled. On remand, the parties may make up the issues, discover, and try the suit. If it develops that plaintiff's claim is predicated on unreasonable rates, he cannot recover in this suit. But if it develops that he was charged the wrong amount, he will not be barred from recovering in this suit because he failed to exhaust an administrative remedy or because of the proceedings he took before the commission.

Reversed.

All Justices concur.