Richard MYERS and Kathryn C. Myers, Appellees,

v.

B. H. CAPLE and Linden Caple, Appellants.

No. 2-58646.

Supreme Court of Iowa.

Oct. 19, 1977.

Rehearing Denied Nov. 17, 1977.

302

Herrick, Langdon, Belin, Harris, Langdon & Helmick of Des Moines, and Nelson, Vasey & Cahill of Nevada, for appellants.

Don C. Swanson of Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

LeGRAND, Justice.

This is an appeal involving a dispute between adjoining landowners in Polk County concerning drainage rights. The trial court enjoined completion of a proposed levee which would divert water across plaintiffs' property and directed removal of a portion of the levee which had already been built. Defendants appeal, and we reverse.

Plaintiffs (Myers) are husband and wife who own property on both the west and east banks of Indian Creek, a stream which runs an irregular course through their property. Defendants (Caple) own property a short distance east of that creek.

Indian Creek periodically overflows, causing some flooding on the land of both Myers and Caple. Although there have been a number of levees constructed upstream from this property, there has been no leveeing in the area with which we are now concerned.

In 1972 Caple explored the possibility of constructing a levee to protect approximately 70 acres from flood damage. He submitted plans for a proposed levee to the Natural Resources Council under the provisions of Chapter 455A, The Code. After some modifications had been made to meet objections raised by the council, this plan was approved and permission to erect a levee was granted.

The council's order contained a condition that it accepted no legal or financial responsibility arising from the construction or maintenance of the levee, and Caple admitted he had been orally advised he was "on his own" as far as construction of the levee was concerned.

Myers appeared at the hearing before the council and objected to the construction of the proposed levee. However, he did not appeal from the order permitting it. *See* § 455A.37, The Code.

When Caple began constructing the levee, Myers sought and secured a temporary injunction enjoining its completion. Later this injunction was made permanent in a decree from which Caple has taken this appeal.

The proposed levee is intended to protect a portion of Caple's land from the flooding to which it is now subject. The question we must decide is whether Myers would suffer such substantial and irreparable damage from the construction of the levee that he is entitled to injunctive relief.

 I. The first issue to be resolved is a procedural one involving the effect of the order issued by the Natural Resources Council permitting Caple to erect the levee. Caple claims this is conclusive as to Myers' rights since Myers did not appeal. He argues failure to appeal is a waiver of any right to contest the building of the levee now.

To state the issue differently, Caple insists the district court had no jurisdiction over this matter because Myers failed first to exhaust the available administrative remedy by appealing from the adverse order of the Natural Resources Council.

Myers correctly points out this was not raised by Caple in the trial court and urges us to disregard it for that reason. However, the matter goes to jurisdiction of the subject matter, which can be raised at any time. *Green v. Sherman*, 173 N.W.2d 843, 846 (Iowa 1970); *Steffens v. Proehl*, 171 N.W.2d 297, 300 (Iowa 1969). The question is a proper one for consideration.

We decide this matter on the law as it stood before the adoption of the Iowa Administrative Procedure Act, which became effective July 1, 1975, subsequent to the events now before us.

When an administrative agency is created, its jurisdiction is ordinarily exclusive within the scope of its statutory authority. Judicial help may be sought only after all administrative procedures have been exhausted. *State ex rel. Turner v. Iowa Electric Light & Power Co.*, 240 N.W.2d 912, 913–914 (Iowa 1976); *Rowen v. LeMars Mut. Ins. Co. of Iowa*, 230 N.W.2d 905, 909 (Iowa 1975); *Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n.*, 224 N.W.2d 639, 647 (Iowa 1974); *Elk Run Telephone Co. v. General Telephone Co. of Iowa*, 160 N.W.2d 311, 315 (Iowa 1968).

Much depends upon the legislative intent in establishing the particular administrative remedy. In determining such intent, it is important to examine the administrative remedies afforded. The absence of an adequate remedy is strong evidence the legislature did not intend the administrative agency to have exclusive jurisdiction of the dispute.

In *Rowen* we said:

"*Exhaustion of Administrative Remedies.* The exhaustion rule is inapplicable unless two conditions are present. An administrative remedy must exist for the claimed wrong, and the statutes must expressly

or impliedly require that remedy to be exhausted before resort to the courts. *Oliver v. Iowa Power and Light Company*, 183 N.W.2d 687 (Iowa 1971); *Elk Run Telephone Co. v. General Telephone Co.* [160 N.W.2d 311 (Iowa 1968)]." (230 N.W.2d at 909.)

In *Gabus* we said:

"Ordinarily an administrative remedy must be exhausted before resort can be had to the courts *if* an administrative agency has 'primary' or 'exclusive' jurisdiction of a controversy. The doctrine does not apply where, by the terms or implications of the statute authorizing an administrative remedy, such remedy is permissive only or not exclusive of the judicial remedy, warranting the conclusion that the legislature intended to permit resort to the courts even though the administrative remedy has not been exhausted. *Oliver v. Iowa Power and Light Co.* [183 N.W.2d 687, 691 (Iowa 1971)]; Davis, *Administrative Law Treatise* [§§ 20.01, 20.10 (1959)]; *see also* 21 Drake L.Rev. [1, 16–23]; 73 C.J.S. *Public Administrative Bodies and Procedure* § 40, pg. 347, § 41, pg. 351.

" * * *

"A significant test of exclusiveness, and hence of whether primary jurisdiction can be said to exist, is the adequacy of the administrative remedy. Inadequacy of that remedy to provide the relief a litigant seeks constitutes some indication the remedy is not exclusive, and therefore, that an independent action can be maintained in a court before the administrative remedy is exhausted." (224 N.W.2d at 647.)

A similar statement appears in *Oliver* where this appears:

"One test of exclusiveness is whether the administrative remedy is adequate. Inadequacy of that remedy to provide the relief to which the litigant would otherwise be entitled constitutes some indication that the remedy is not exclusive and that an independent action in court can be maintained. * * * " (183 N.W.2d at 691).

In applying the foregoing principles to the controversy now before us, we are convinced the legislature did not intend Chapter 455A to vest exclusive jurisdiction of drainage differences between adjoining landowners in the Natural Resources Council.

Instead its primary purpose was to protect the *state's* interest in vital water resources. *See* § 455A.2. In doing so the statute directs the council to consider the rights of the property owners affected (§ 455A.20); but once council action has been taken, as it was in this case, the administrative agency is without power to remedy any resulting damage.

We find no authority by which the council could either award damages for injury to Myers' land or enjoin further damage to his property. While the cases are not factually alike, *Natural Resources Council v. Van Zee*, 261 Iowa 1287, 158 N.W.2d 111 (1968) discusses the rather narrow power of the council to remedy violations of Chapter 455A. That same reasoning is applicable here.

We hold this is not a case requiring Myers to exhaust the administrative remedies before seeking injunctive relief from a court of equity. The trial court had jurisdiction in this matter.

II. This brings us to the claim that the evidence does not justify granting injunctive relief, either prohibitory or mandatory. From our de novo review of the record, we agree.

▮ The equitable power to enjoin is exercised only under extraordinary circumstances. It is not a routine remedy. It is designed primarily to avoid irreparable damage and to afford relief when there is no adequate remedy at law. *Kriener v. Turkey Valley Community School District*, 212 N.W.2d 526, 536 (Iowa 1973); *Johnson v. Pattison*, 185 N.W.2d 790, 797 (Iowa 1971); *Maher v. Park Homes, Inc.*, 258 Iowa 1291, 1297, 142 N.W.2d 430, 434 (1966); 43 C.J.S. *Injunctions* § 23a, b, 446–448 (1945); 42 Am.Jur.2d *Injunctions* §§ 48, 49, at 787–790 (1969).

The party seeking an injunction has the burden to show not only a violation of his rights but also that he will suffer substantial damage unless one is granted. *Rosendahl Levy and/or Drainage District v. Iowa State Highway Comm'n.*, 171 N.W.2d 530, 537 (Iowa 1969); *Schmitt v. Kirkpatrick*, 245 Iowa 971, 977, 63 N.W.2d 228, 231 (1954). In deciding whether an injunction is appropriate, we are committed to the "relative hardship" or "balance of convenience" standard. *Kriener v. Turkey Valley Community School District, supra*, 212 N.W.2d at 536 and *Johnson v. Pattison, supra*, 185 N.W.2d at 797. In the latter case we said:

> "Equity usually invokes its extraordinary injunctive power only when necessary to prevent irreparable harm or when the complaining party is otherwise without an effective remedy. If the injury is slight and an injunction would result in serious hardship or loss to the defendant, courts have refused to enjoin, leaving the plaintiff to his claim for damages. Under this comparative injury doctrine, injunctions which are likely to cause greater injustice than they seek to prevent are properly refused."

*See also Riter v. Keokuk Electro-Metals Co.*, 248 Iowa 710, 722–727, 82 N.W.2d 151, 159–161 (1957).

Of course, the very purpose of the levee was to divert some water from Caple to Myers so that Caple could reclaim 70 acres of his own land for cultivation. Myers insists this will cause "devastating" damage to approximately 29 acres of his farm.

Thus we are faced with the problem of adjusting the rights of these neighbors, one understandably anxious to make tillable what is now frequently unusable and the other, just as understandably, desirous of keeping as much of his land flood-free as possible. We must view the evidence keeping in mind these competing principles.

Our review is de novo, but we have said we are reluctant to interfere with the trial court's determination an injunction should issue. *State ex rel. Faches v. Wedelstedt*, 250 N.W.2d 64, 65 (Iowa 1977).

Nevertheless we feel compelled to do so here because the evidence falls short of establishing Myers' right to an injunction under the principles referred to in this division.

Much of the evidence was necessarily anticipatory because the levee had not been completed. Myers produced three witnesses, including himself. Their testimony was far from convincing as to the damages which were likely to occur when the levee was completed.

Caple relied almost entirely on Mr. Witt, a civil engineer, who designed the levee. He testified there would be no significant harm to Myers, either by way of increased water flow or by longer retention of flood waters on his land.

It is quite true some of his conclusions were reached by comparing the anticipated increased flow to that which would exist if there were no levee. As Myers argues, this is not the best test of the damage he would suffer. However we cannot escape the finding that Witt's testimony, taken in its entirety and given the fair interpretation to which it is entitled, negates the probability of substantial damage to Myers' land. Unlike the trial court, we believe it is by all odds the most persuasive evidence in the record.

According to Witt, only in extraordinary circumstances would the slight additional increase in the volume of water affect Myers. Myers would like to use 1974 as a typical example of harm which might result from the levee; but 1974 was a rare flood year, perhaps the worst in history. It is not likely to be repeated except on rare occasions. The question resolves itself to whether Caple should be deprived of the right to reclaim and cultivate some 70 acres of his land year in and year out because in exceptional years 29 acres of Myers' land might suffer additional flooding.

One of our early cases, *Black v. Escher*, 186 Iowa 554, 556, 173 N.W. 50, 51 (1919), becomes particularly significant in this context. There we said, in holding an injunction should not issue:

"Now, of course, we agree with appellee that, while the defendant, and incidentally the world, may be benefited because the act of the defendant makes wastelands productive, such benefit is no justification for an injury to plaintiff. But while this is so, it is a fair inquiry, when the extraordinary process of injunction is invoked upon evidence which fails to show clearly that substantial injury has occurred or will happen, whether the respective benefit and injury do not demand that plaintiff be relegated to his remedy at law, rather than that defendant should be deprived of said benefit in order that all injury to the other party may be made impossible. * * * The whole case, then, narrows to what, if any, substantial injury has been inflicted upon the plaintiff by the reclamation project of the defendant. It is only under rather exceptional conditions that the land of plaintiff is overflowed at all. No one may be sure that these conditions will arise in the future, and, if so, how frequently."

In the present case, just as in *Black v. Escher*, there will be some flooding of Myers' land whether the levee is built or not. In unusual flood years, the levee may cause additional land to be flooded and may retain the flood waters for a longer period than otherwise; but there is no satisfactory evidence how often, if at all, this is likely to occur. Under *Black*, we do not believe this is the kind of evidence upon which injunctive relief should be granted. *See also Kellogg v. Hottman*, 226 Iowa 1256, 1259–1260, 286 N.W. 415, 417 (1939).

We hold Myers has failed to show any reasonable likelihood of substantial or irreparable damage. The injunction should not have issued.

This does not mean Myers is without a remedy if the completed levee causes damage to his land. Nothing we have said forecloses his right to sue for damages nor does it preclude him from asking for injunctive relief if later developments warrant it.

The injunction issued by the trial court is accordingly dissolved and the judgment is reversed.

REVERSED.