**MID–IOWA COMMUNITY ACTION, INC., and Upper Des Moines Opportunity, Inc., Appellees,**

v.

**IOWA STATE COMMERCE COMMISSION, Appellant,**

**Office of Consumer Advocate, Intervenor–Appellee.**

**OFFICE OF CONSUMER ADVOCATE, Appellee,**

v.

**IOWA STATE COMMERCE COMMISSION, Appellant,**

**Mid–Iowa Community Action, Inc., and Upper Des Moines Opportunity, Inc., Intervenor–Appellees,**

**Iowa Electric Light and Power Company, Intervenor–Appellant.**

No. 87–227.

Supreme Court of Iowa.

April 13, 1988.

Roger D. Colton, National Consumer Law Center, Inc., Boston, Mass., for appellees Mid–Iowa Community Action, Inc., and Upper Des Moines Opportunity, Inc.

Susan Allender, Gen. Counsel, Allan Kniep and Dean F. Stonner, Asst. Gen. Counsel, Des Moines, for appellant Iowa Utilities Bd., Dept. of Commerce.

James Maret and Ben Stead, Des Moines, for intervenor-appellee Office of Consumer Advocate.

Thomas J. Pitner and Julie Cohen, Cedar Rapids, for intervenor-appellant Iowa Elec. Light and Power Co.

NEUMAN, Justice.

This appeal concerns the scope of authority granted the Iowa Utilities Board to order payment of refunds to customers who have paid unlawful utility charges, and to impose civil penalties for violation of laws pertaining to utility service disconnection. The issues are raised in the context of consolidated petitions for judicial review, and the parties agree that pertinent sections of Iowa Code chapter 476 govern the controversy.[1] Because we differ with the construction placed upon these statutes by the district court, we affirm in part, reverse in part and remand for further proceedings.

I. *Background Facts and Proceedings.* Mid–Iowa Community Action, Inc., and Upper Des Moines Opportunity, Inc. (referred to collectively as MICA), are two community action agencies providing counseling and mediation services for low income Iowans, including assistance for utility service disconnection. In September 1983, these two agencies filed a complaint with the Iowa State Commerce Commission, now known as the Iowa Utilities Board (board), concerning the lawfulness of a disconnection notice issued in 1982 and 1983 by Iowa Electric Light and Power Company (Iowa Electric) to customers delinquent in paying their utility bills. The complaints sought declaratory and equitable relief, including the imposition of civil penalties. The Of-

fice of the Consumer Advocate (OCA) was joined as a party pursuant to Iowa Code section 475A.2 (1983).

Preliminary proceedings before an agency hearing officer established that Iowa Electric's disconnection notice failed to properly advise customers of their legal rights, particularly with regard to the utility's responsibility to negotiate reasonable payment plans extending over twelve months. Further discovery was ordered to identify customers whose disconnection was proximately caused by the unlawful notice and to determine the refund necessary to compensate those customers for reconnect charges paid.

In March 1985, the hearing officer affirmed its finding on the unlawfulness of the disconnect notice, but determined that the board was without authority under Iowa Code section 476.3(1) to require refunds of reconnect charges paid by Iowa Electric's aggrieved customers. The hearing officer also found that MICA failed to sustain its burden of establishing a basis for the imposition of civil penalties against the utility under sections 476.20(4) and 476.51. In July 1985, the hearing officer's proposed decision was affirmed by the board.

MICA and OCA petitioned for judicial review. The district court reversed the board's decision, ordering a computation and refund of the unlawfully collected reconnect charges and directing the agency to reconsider imposition of civil penalties without regard to proof of willfulness by the utility. On appeal from this ruling, Iowa Electric and the board frame the legal issues as follows: (1) Did the district court err in holding the board has authority under section 476.3(1) to order a utility to pay refunds to customers who have paid the utility an unlawful charge? (2) Did the district court err in holding that section 476.20(4) allows the board to impose civil penalties upon a utility for violation of the disconnection statute and rules regardless of whether the violation was "willful"? We shall consider the questions in turn.

---

1. Unless otherwise indicated, all references are to the 1987 Code.

**II.** *Authority to Order Refunds.* Iowa Code section 476.3(1) authorizes the board to investigate complaints concerning the reasonableness of a utility's regulated activities. Pertinent to this appeal is the last sentence of the statute:

> When the board, after a hearing held after reasonable notice, finds a public utility's rates, charges, schedules, service, or regulations are unjust, unreasonable, discriminatory, or otherwise in violation of any provision of law, the board shall determine just, reasonable, and nondiscriminatory rates, charges, schedules, service, or regulations to be observed and enforced.

Iowa Code § 476.3(1). The district court determined that the statute, when read in harmony with agency regulations, provides retroactive as well as prospective relief to utility customers wronged by collection of an unlawful reconnect charge.

On appeal, the board and Iowa Electric challenge the district court's interpretation of the statute, arguing it is contrary to this court's holding in *Oliver v. Iowa Power & Light Co.*, 183 N.W.2d 687 (Iowa 1971). *Oliver* involved a class action brought by utility customers for alleged overcharges for electricity. *Id.* at 689. We held that section 490A.3 (1971), the predecessor to section 476.3, required no reparation by a utility for wrong amounts charged. *Id.* at 692. In reaching this conclusion, we highlighted the legislature's use of the words "charges ... to be *thereafter* observed and enforced" as indicative of a legislative intent to authorize a prospective remedy only. *Id.*

In 1981, the legislature amended this section, removing the word "thereafter" from the last sentence of the statute as well as making other grammatical changes. 1981 Iowa Acts ch. 156, § 5. The district court inferred from this revision a legislative intent to grant the board authority to order retroactive relief, i.e., refunds, as well as prospective relief. Appellants contend omission of the word "thereafter" was no more substantive than the other grammatical revisions made and thus *Oliver* should control our decision. We cannot agree.

It is presumed that a change in the language of a statute indicates a legislative intent to change the law. *State ex. rel. Fenton v. Downing,* 261 Iowa 965, 972, 155 N.W.2d 517, 521 (1968); *see also State v. Phelps,* 417 N.W.2d 460, 461 (Iowa 1988). Although that presumption is tempered by the corollary rule that the legislature's intent to accomplish change in the law's meaning must be clear and unmistakable, *State v. Osborn,* 368 N.W.2d 68, 69–70 (Iowa 1985); *see also State v. Cole,* 421 N.W.2d 888, 889 (Iowa 1988), our ultimate goal in statutory interpretation is to determine and effectuate the intent of the legislature. *Beier Glass Co. v. Brundige,* 329 N.W.2d 280, 283 (Iowa 1983).

Iowa administrative regulations pertaining to gas and electric service provide:

> When a customer has been overcharged as a result of incorrect reading of the meter, incorrect application of the rate schedule, *incorrect connection of the meter, or similar reasons,* the amount of overcharge shall be adjusted, refunded or credited to the customer.

199 Iowa Admin.Code 19(4)(13)(d); 20(4)(14)(e) (emphasis added). Like the district court, we interpret this rule as not only allowing but compelling the board to order the refund of overcharges and illegally collected revenue. Read in harmony with section 476.3, we find such a scheme consistent with the broad general powers granted the board to effect the regulatory purposes of chapter 476. *See* Iowa Code § 476.2. To suggest that the board has the authority to regulate the imposition of fees but is powerless to order refunds for fees unlawfully charged is untenable. Equally illogical is the suggestion that the board may determine the amount of refund due but the aggrieved customer must pursue a separate court action to effect recovery. We choose not to read such impractical results into chapter 476. Thus we affirm the district court's remand to the agency to determine and order the appropriate refunds.

**III.** *Imposition of Civil Penalties.* For Iowa Electric's use of unlawful disconnection notices, MICA and OCA sought civ-

il penalties pursuant to Iowa Code section 476.20(4). That section states, in its entirety:

A public utility which violates a provision of this section relating to the disconnection of service or which violates a rule of the board relating to disconnection of service is subject to civil penalties imposed by the board under section 476.51.

Section 476.51 provides, in pertinent part:

A public utility which *willfully* violates a provision of this chapter, a rule adopted by the board, or a provision of an order lawfully issued by the board, is subject to a civil penalty, which may be levied by the board, of not more than one hundred dollars per violation or one thousand dollars per day of a continuing violation, whichever is greater.

(Emphasis added.) Reading these two statutes together, the board determined that in the absence of proof that Iowa Electric willfully failed to give the required notice, no civil penalty could be imposed under the statute. The district court reversed the board, finding that the "willful" requirement of section 476.51 applied only to utility violations outside the realm of service disconnection. Given the serious nature of service interruption and the potentially hazardous consequences for customers, the court inferred from the absence of the term "willful" in section 476.20(4) a legislative intent to impose civil penalties for even nonwillful violations of the service disconnection rule.

We cannot agree with the trial court's interpretation of these statutes, no matter how laudable the purpose underlying its reasoning. Like appellants, we think that the reference to section 476.51 in section 476.20(4) was clearly intended as a road map to guide the reader's attention to the general section for implementing these penalties, and was intended to incorporate all provisions of section 476.51 into the penalties allowed under section 476.20(4). To suggest otherwise would be contrary to the rule of statutory construction requiring us to harmonize all portions of the statutes in question without giving undue importance to a single or isolated part. *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 376 N.W.2d 878, 881 (Iowa 1985); *see also Hines v. Illinois Cent. Gulf R.R.*, 330 N.W.2d 284, 288 (Iowa 1983). Moreover, the court's interpretation would nullify a board administrative rule specifically adopted "to implement Iowa Code section 476.51 and section 476.20" which requires a "finding that the utility willfully violated a provision of Iowa Code chapter 476, a board rule, or a provision of an order lawfully issued by the board." 199 Iowa Admin.Code § 8.1. Clearly these statutes were intended by the legislature to be read together, and the element of willfulness incorporated fully into section 476.20(4). Proof of willfulness is thus required before civil penalties can be imposed. The decision by the district court to require the agency to reconsider its findings on this issue must, therefore, be reversed.

We remand this case to the utilities board for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except CARTER, J., who takes no part.