Steven H. HAYES, Appellee,

v.

M.E. KERNS, Appellant,

Kerns-Hayes Implement Company, Defendant.

No. 85–506.

Supreme Court of Iowa.

May 21, 1986.

W. Don Brittin, Jr., of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, and Erwin L. Buck of Buck Law Offices, Britt, for appellant.

William B. Serangeli of Smith, Schneider & Stiles, P.C., Des Moines, for appellee.

REYNOLDSON, Chief Justice.

Plaintiff Steven H. Hayes filed this action in Hancock County, seeking various legal and equitable remedies after his purchase of an interest in a John Deere dealership in Britt, Iowa. The seller, defendant M.E. Kerns, counterclaimed for the balance of the purchase price note, and Hayes responded with several affirmative defenses. Trial court gave only partial relief to each party. Kerns has appealed, and Hayes has cross-appealed.

We dismiss the appeal in part and reverse the district court judgments and decrees in part.

Trial testimony disclosed that in the summer of 1977 Hayes was earning approximately $30,000 per year as an out-of-state corporate employee. He wanted to return to Iowa and acquire an interest in a business. Kerns, who owned and managed a John Deere dealership in Britt, was interested in acquiring a "junior partner." These parties, brought together by Hayes' father, a local farmer, began exploring ways that Hayes could purchase an interest in the dealership on an installment basis.

Hayes confirmed through the records of Kerns' corporation that for a number of years John Deere Company had paid the dealership, then designated as Kerns Implement Company, a six percent "volume discount" on annual sales toward the end of each calendar year. These rebates had totaled $48,499.05 in 1977 and $57,775.70 in 1978. For years, following this payment, Kerns had declared year-end bonuses for himself in the sums of $20,000 to $25,000, plus dividends. At the same time, the retained earnings of the corporation had increased substantially.

Hayes, who had little capital, testified Kerns assured him that annual bonuses and dividends, paid from the volume discounts, would be available to assist him in making annual payments toward an interest in the business. Kerns denied making these statements.

The parties eventually entered into a ten-year agreement under which Kerns' corporation would hire Hayes for ten months. At the end of that time Kerns would determine whether Hayes would continue. If so, Hayes could purchase from Kerns forty-nine percent (245 of 500 shares) of the company's common stock. Later, Hayes could purchase the remaining shares.

After the trial period Hayes purchased the forty-nine percent interest for nearly $266,000. He paid $50,000 down (including $45,000 borrowed from his father), and executed a promissory note for the balance. This note was payable in annual installments of approximately $21,500, plus eight percent interest. Hayes pledged his shares of stock as security, and his wages were raised from $15,000 per year to $18,000 per year. The company's articles of incorpo-

ration were amended to change its name to Kerns-Hayes Implement Company.

Trial court found that following this transaction Hayes was frozen out of any management role in the business. Kerns continued to operate it solely for his own purposes and benefit, ignoring Hayes' interests. Kerns paid a bonus only reluctantly for the year 1979, and, breaking tradition, refused to pay any bonus for 1980. During the critical time in the relationship of these parties, however, the retained earnings of Kerns-Hayes Implement Company increased from $406,039 in 1979 to $502,968 in 1982.

Hayes paid the 1980 and 1981 installments on the purchase price note even though he became disillusioned and left the company early in 1981. August 13, 1982, he brought this action against Kerns and the corporation, alleging common law fraud, securities law fraud, intentional and negligent misrepresentation, and failure to register the sale of the securities. Hayes' prayer for relief requested a rescission of the stock purchase agreement, liquidation of the corporation for oppressive acts,[1] and various compensatory and punitive damages.

Kerns counterclaimed, seeking to recover the balance due on Hayes' promissory note. Hayes' answer to the counterclaim included several affirmative defenses. He alleged that the fraudulent and oppressive acts against him relieved him of any obligation to make payments on the note. Hayes also alleged a violation of the Iowa Uniform Securities Act, fraud and deceit, negligent misrepresentation, failure of consideration, violation of Iowa Code chapter 554, unjust enrichment, and misrepresentation.

The trial court incorporated in its "Order, Judgment and Decree" filed January 23, 1985, a master's findings of fact. The court concluded Kerns had acted in bad faith in defeating Hayes' reasonable expectation of receiving some annual bonuses and dividends, had entered into improper personal loans and leases with the corporation, had improperly used corporate funds and equipment for his personal benefit, and had oppressed Hayes, the minority stockholder.

Although trial court's findings of fact described a persistent course of conduct by Kerns that constituted oppression of Hayes as a minority stockholder[2] and might well be viewed as a failure of consideration, trial court's conclusion inexplicably stated, "[t]here is no merit to plaintiff's affirmative defenses to defendant's counterclaim." Nonetheless, the court, ordering that "[a]ll issues raised that should have been brought in equity shall be transferred to equity," held that because Kerns oppressed Hayes, the latter was liable only for principal and interest payments on his note accruing up to, but not after, the date of filing of his petition. The court rendered judgment in favor of Kerns

> for all principal and interest payments accrued to the date of the petition, in the amounts provided by law and by the agreement between the parties. Defendant shall further be awarded judgment for interest, at the amount provided by law, for the period from the date of the petition to the date of this Order, Judgment and Decree.
>
> Defendant shall certify to Clerk of Court the amount due.

The court ordered Kerns to reimburse the corporation for certain sums improperly expended for personal purposes, and further ordered the corporation to be dissolved and its assets liquidated.

Pursuant to the court's direction, Kerns filed a "Certificate of Amount Due," which included the 1982 installment of principal

---

1. *See* Iowa Code § 496A.94(1)(c) (1981).

2. Trial court defined oppression as "a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder . . . is entitled to rely. . . . . . . [The concept] suggests harsh, dishonest or wrongful conduct and a visible departure from the standards of fair dealing which inure [to] the benefit of the majority to the detriment of the minority," citing to *Jackson v. St. Regis Apartments, Inc.,* 565 S.W.2d 178, 183 (Mo.Ct.App.1978) and Annot., 56 A.L.R.3d 358, 362 (1974).

and interest, together with a subsequent variable-interest computation, all totaling $58,321.21. Hayes filed a resistance, asserting Kerns should have used the Iowa Code section 535.3 ten percent rate rather than the variable rate. Kerns responded, relying on provisions in the promissory note and certain provisions in Iowa Code sections 535.2 and 535.3.

On the basis of these filings trial court addressed the interest controversy with a ruling dated February 22, 1985, that varied from the contentions of both parties. The court directed the defendant to "forward to the court a Judgment Entry consistent with Paragraph 6 of this Order [relating to interest]."

The record as now established by the filings and oral submission discloses Kerns prepared and forwarded a "Supplemental Judgment, Order and Decree." In this instrument, which was signed by the trial court and filed March 13, 1985, Kerns gratuitously added the provision, "It is further ORDERED, ADJUDGED and DECREED that the balance of the promissory note in the amount of $151,086.94 be and the same is hereby canceled, and plaintiff has no further obligation thereunder except the payment of the judgment entered herein."

Kerns' Notice of Appeal was served April 9, 1985. It purports to appeal from the March 13 supplemental judgment, order, and decree, and states an appeal is not intended from "the Order, Judgment and Decree filed ... January 23, 1985, except to the extent it addressed in an interlocutory manner the matters with respect to which final judgment was entered ... March 13, 1985." Hayes' cross-appeal was served April 11, 1985.

Hayes filed a motion to dismiss Kerns' appeal for lack of jurisdiction. He asserted the January 23, 1985, order canceling the balance of the promissory note was a final judgment. Because more than thirty days had expired prior to filing of this appeal, Hayes contended the appeal was untimely. A single justice of this court ordered this issue to be submitted with the appeal. Hayes filed a motion to reconsider this ruling and a three-justice panel of this court overruled the motion to dismiss. *See* Iowa R.App.P. 22(f).

In this appeal Hayes again has challenged our jurisdiction to consider the issue of his liability for the installments due on the note following the filing of his petition, asserting that issue was determined in the January 23, 1985, judgment and decree from which no appeal was taken. While contending Hayes cannot cross-appeal from trial court's failure to grant him total rescission because he did not appeal from the judgment and decree dated January 23, 1985, Kerns argues that he can appeal the court's cancellation of the note installments due after the petition was filed because of the redundant provision he wrote into the judgment and decree filed March 13, 1985. We first address this question of our jurisdiction to decide those issues other than the one involving interest.

## I. *The jurisdictional issue.*

We explore this question in light of principles that, while well-recognized, nonetheless are difficult to apply.

■ Iowa Rule of Appellate Procedure 5(a) mandates that appeals to this court must be taken within thirty days from the entry of the order, judgment, or decree. The requirements of this rule are mandatory and jurisdictional. Failure to comply with rule 5(a) requires dismissal of the appeal. *Kunau v. Miller*, 328 N.W.2d 529, 530–31 (Iowa 1983); *Neff v. Iowa State Highway Commission*, 253 Iowa 98, 102, 111 N.W.2d 293, 296 (1961).

Our case law is clear that there may be two final judgments or decrees "in the same cause, the one settling the substantial merits of the case, and the other based upon further necessary proceedings, from each of which an appeal will lie." *Iowa Public Service Co. v. City of Sioux City*, 254 Iowa 22, 28, 116 N.W.2d 466, 469 (1962) (quoting 4 C.J.S. *Appeal and Error* § 101, at 283 (1957)); *see Rowen v. LeMars Mutual Insurance Co.*, 357 N.W.2d 579, 582 (Iowa 1984) ("We find that the adjudication

is final because the case falls within the rule that a case may have more than one final order."); *Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 207 (Iowa 1980) ("A case, for purposes of appeal, may have more than one final order. Such an initial final order must establish the substantial rights of the parties and must place beyond the issuing court the power to return the parties to their original positions." (citations omitted)); *Lyon v. Willie*, 288 N.W.2d 884, 887 (Iowa 1980) ("Two final orders are possible in a single case, one putting it beyond the power of the court to put the parties in their original positions in relation to a specific issue, and the other adjudicating remaining issues in the case."); *In re Fenchel*, 268 N.W.2d 207, 208–09 (Iowa 1978) (The original decree was final concerning the matters adjudicated, even though it expressly provided for a supplemental decree.); *see also Moody v. Muscogee Manufacturing Co.*, 134 Ga. 721, 730–32, 68 S.E. 604, 608–09 (1910); *McMurray v. Day*, 70 Iowa 671, 672–74, 28 N.W. 476, 477 (1886).

"Every final adjudication of any of the rights of the parties in an action is a judgment." Iowa R.Civ.P. 219. In deciding what is a final adjudication we have refused to exalt form over substance, stating:

> The use of particular forms of words is not essential to a judgment. The sufficiency of a writing claimed to be a judgment is to be tested by its substance rather than its form. If it corresponds with the definition of a judgment and appears to have been intended by the court as the determination of the rights of the parties, and shows in intelligible language the relief granted, the absence of language commonly deemed especially appropriate to final judgments is not fatal.

*Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613, 614–15 (Iowa 1973) (quoting *Whittier v. Whittier*, 237 Iowa 655, 662, 23 N.W.2d 435, 440 (1946)). We consider the intentions of the trial court relevant to the issue of finality. *Loudon v. Hill*, 286 N.W.2d 189, 191 (Iowa 1979) ("Moreover, the test of finality is whether the determination is dispositive of the case, and the intention of the trial court is relevant on that issue."). If it appears trial court intended its acts to be the entry of a judgment we should, if possible, avoid impairing its operation and validity. *See Flynn*, 203 N.W.2d at 615.

Although ordinarily a judgment or decree incorporating a money award should specify the amount, absence of a stated sum is not necessarily fatal:

> The general rule is that a final judgment for money must specify the amount awarded or the means for determining that amount. Such award must be certain and definite as to the amount thereof, or be susceptible of being made so by proper construction or by mere mathematical computation. ...

> Although some authorities do not permit reference to any aid outside the judgment to ascertain the amount for which it is rendered, ordinarily the amount of recovery, if not specified or if ambiguously stated in the adjudicating part of the judgment, may be supplied not only from other portions of the judgment, but also from the record as a whole, including the pleadings, the verdict of the jury, and bonds or other instruments filed in the case.

46 Am.Jur.2d *Judgments* § 81 (1969); *cf. City of Fort Wayne v. Bentley*, 181 Ind. App. 114, 122, 390 N.E.2d 1096, 1102–03 (1979) (Judgment was not defective for uncertainty when amount due the prevailing parties could be determined through a simple calculation.); *Scheldrup v. Gaffney*, 243 Iowa 1297, 1303–04, 55 N.W.2d 272, 275–76 (1952) (Judgment in equity was certain and definite even though provision awarding alimony and child support did not specify an exact dollar amount and required a mathematical calculation.).

■ With these concepts in mind, we examine the January 23, 1985, "Order, Judgment and Decree" to determine whether it was a final judgment, and was so intended by the trial court. This instrument extends nineteen pages of legal-size paper in the

district court file, not counting the master's report incorporated by reference, which in turn was spread on twenty pages of legal-size paper. The "Order, Judgment and Decree" was so captioned by the court. Separate divisions are subcaptioned "Findings of Fact," "Conclusions of Law," "Application for Temporary Injunction and Motion to Dissolve Injunction," and finally, "Order, Judgment and Decree." The final division ordered Kerns to reimburse the corporation certain specified sums, held certain leases invalid, struck the provision of the stock pledge agreement waiving Hayes' right of redemption, transferred issues that should have been brought in equity to equity, dissolved the corporation and ordered its assets liquidated, provided for fees for the master, fixed attorney fees, and provided for division of costs. Most significant here is paragraph "F" of the final division, which states:

All obligations of plaintiff on the promissory note dated February 13, 1979, are excused as of August 13, 1982, the date of the petition. Defendant shall have judgment against plaintiff for all principal and interest payments accrued to the date of the petition, in the amounts provided by law and by the agreement between parties. Defendant shall further be awarded judgment for interest, at the amount provided by law, for the period from the date of the petition to the date of this Order, Judgment and Decree.

Defendant shall certify to Clerk of Court the amount due.

These provisions plainly are final and definitive. *See Citizens State Bank v. Central Savings Association,* 267 N.W.2d 33, 34 (Iowa 1978) (The general test of finality is whether the trial court's ruling is decisive of the case.). The promissory note was reproduced in full in the pleadings and its execution and delivery there admitted. Trial court's fact-findings disclosed Hayes paid the installments of principal and interest due January 2, 1980, and January 2,

1981, and made no subsequent payments. There is no controversy concerning these facts. When the court "excused" Hayes from all obligations on the note following the filing of the petition on August 13, 1982, and provided for judgment against Hayes for all principal and interest accrued prior to that date, it is clear the reference could be only to the unpaid principal and interest due January 2, 1982, a point neither party contests. The remainder of the award against Hayes involves what should have been a simple mathematical computation of interest, utilizing the provisions of the note and the Iowa Code relating to interest.

Although it is true, as Kerns contends, that a ruling is not final when the district court intends to do something further to signify its final determination of the case, *In re Marriage of McCreary,* 276 N.W.2d 399, 400 (Iowa 1979), trial court obviously intended its January 23, 1985, "Order, Judgment and Decree" to be final. Defendant was to compute and certify the amount, not to the court, but to the clerk of court, apparently for entry. The court reserved nothing for its further consideration. The final provision in the court's judgment and decree was significant as a clear warning to the parties:

*If no appeal is filed or perfected within the required time,* Clerk of Court shall release the exhibits to the owner or their attorneys of record, upon a proper receipt executed on the docket by the recipient; otherwise, the exhibits may be destroyed by the Clerk [after] *one year from this date* as provided by Iowa Rule of Civil Procedure No. 253.1.[3]

(Emphasis added.)

Kerns concedes the January 23, 1985, judgment and decree is final in some respects because he contends we have no jurisdiction to review Hayes' claim that he should have been granted full rescision,

---

**3.** Iowa Rule of Civil Procedure 253.1 provides:

*Disposition of exhibits.* One year after the final determination of a case, the clerk may destroy all exhibits filed with him provided

that he shall notify counsel of record in writing that the exhibits will be destroyed unless receipted for within sixty days thereafter.

an issue Kerns asserts was adjudicated in that determination and not appealed by Hayes. Kerns' contention he is rightfully here rests on the fragile premise that the second "Supplemental Judgment, Order and Decree," drafted by him, contained the provision that "the balance of the promissory note in the amount of $151,086.94 be and the same is hereby canceled." The controversy between these parties that arose subsequent to the January 23, 1985, judgment and decree, however, did not relate to the "excused" balance of the promissory note, nor to the unpaid installment of principal and interest due January 2, 1982, but related only to the computation of other interest.

We are convinced the provision last quoted, relating to cancellation of the balance on the note, adds nothing to the holding of the first judgment, which "excused" Hayes from all payments subsequent to August 13, 1982. That determination, absent the posttrial motions identified in rule 5, placed it beyond the power of the court to return the parties to their original positions. *See Green*, 293 N.W.2d at 207. There was no appeal from that judgment and decree: Kerns' appeal was from the supplemental judgment and decree. Thus we likewise cannot modify that result unless we are in some manner foreclosed from reexamining the issue of our own jurisdiction. As bearing on this point we have written:

> Untimely appeals present questions of subject matter jurisdiction. The fact that lack of subject matter jurisdiction may be raised at any time in a proceeding reflects the seriousness with which courts view jurisdictional matters. We raise matters of jurisdiction on our own motion. Our rules of civil and appellate procedure reflect that concern. District court may not relieve a party who fails to make a timely appeal, even when the failure is wholly due to the fault of another. Though we may enlarge or shorten the time prescribed by the rules of appellate procedure for the doing of any act, we are prohibited from enlarging the time for appeal except for the limited power provided by Iowa Rule of Appellate Procedure 20(b).

*Uchtorff v. Dahlin*, 363 N.W.2d 264, 267 (Iowa 1985) (citations omitted); *see Tigges v. City of Ames*, 356 N.W.2d 503, 510 (Iowa 1984); *State v. Ryan*, 351 N.W.2d 186, 187 (Iowa 1984).

■ Even though a three-justice panel of this court (a statutory quorum under Iowa Code section 602.4101(1)) has overruled Hayes' motion to dismiss for lack of subject matter jurisdiction, we hold that as long as the case is before us we may reexamine our jurisdiction in light of further study and oral submission of the case. This holding is consistent with the rule in trial court that provides, "[u]ntil ... a final order or decree [is] rendered, the trial court will have the power to correct any of the rulings, orders, or partial summary judgments it has already entered." *Mason City Production Credit Association v. Van Duzer*, 376 N.W.2d 882, 885 (Iowa 1985); *see Davenport Bank & Trust Co. v. City of Davenport*, 318 N.W.2d 451, 455 (Iowa 1982); *Avoca State Bank v. Merchants Mutual Bonding Co.*, 251 N.W.2d 533, 539 (Iowa 1977); *Cowman v. LaVine*, 234 N.W.2d 114, 124 (Iowa 1975).

We hold the January 23, 1985, unappealed judgment and decree was a final adjudication of all the issues raised by the appeal and cross-appeal except the subsequent controversy relating to interest. We thus have jurisdiction to consider only that issue.

## II. *The interest issue.*

As we have indicated, Kerns timely appealed from the second final judgment and decree that adjudicated the interest controversy.

In his appeal, Kerns has laid out the rationale for his position regarding the interest to which he is entitled. Hayes' brief concedes this issue and in oral argument his counsel commendably acknowledges his claims regarding interest, advanced in trial court, were in error.

We therefore reverse trial court's second final judgment and decree, and remand this

case for modification of that adjudication to conform to Kerns' computations.

APPEAL DISMISSED IN PART; DISTRICT COURT JUDGMENTS AND DECREES REVERSED IN PART.

All Justices concur except LAVORATO, J., who takes no part.