**IOWA ELECTRIC LIGHT AND POWER COMPANY, Appellant,**

v.

**Martha LAGLE d/b/a Lagle Cards & Party, Appellee.**

No. 87–194.

Supreme Court of Iowa.

Oct. 19, 1988.

394

Julie A. Cohen, Cedar Rapids, for appellant.

David P. McManus of Olinger & McManus, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Electric service to Martha Lagle's retail shop was disconnected by Iowa Electric Light & Power Company for nonpayment of her bill. She protested to the Iowa State Commerce Commission (now known as the Iowa Utilities Board), claiming there must have been a company error, because her meter readings had suddenly gone berserk. (It turned out that another tenant in the building who was on the same meter had abandoned the premises, leaving walk-in cooler doors open.)

The Iowa Utilities Board (board) processed her complaint on an informal basis and advised her that any power loss was on her side of the meter, and therefore was her responsibility. The board advised her, also, that if she was dissatisfied with this disposition, she could initiate formal complaint proceedings before the board. She wrote a second letter but did not initiate a formal complaint. Later, when Iowa Electric sued Lagle for her unpaid bill, she counterclaimed for damages resulting from the utility company's alleged negligence.

The district court refused to apply issue preclusion principles to bar Lagle's counterclaim, and Iowa Electric filed this interlocutory appeal. Iowa Electric's appeal was initially heard by the court of appeals, which held that the district court had properly resolved the procedural issues. The court of appeals also held that the informal disposition by the board did not have preclusive effect in the district court case. We granted further review and now affirm the court of appeals and the district court.

## I. *The Procedural Issues.*

In Iowa Electric's suit against Lagle, she answered and raised as an affirmative defense Iowa Electric's negligence in connection with her bill. In May 1986, a motion for partial summary judgment was filed by Iowa Electric on the ground that the board's decision in the informal disposition of Lagle's complaint was res judicata and thus precluded any consideration of Lagle's affirmative defense. Lagle, who was not represented by an attorney at the time, did not file a resistance, and an order was entered granting partial summary judgment to Iowa Electric on issue preclusion grounds.

In November 1986, Lagle retained a lawyer and filed a motion to reconsider the court's earlier summary judgment. She also filed a counterclaim for damages and a demand for a jury trial on all the issues in the case, including those raised by the initial petition and answer.

On Lagle's motion to reconsider, the district court changed its position and entered

an order allowing Lagle's counterclaim to stand, concluding it had made a mistake earlier in barring it on res judicata grounds. The court also entered an order granting the demand for a jury trial on all of the issues in the case. Iowa Electric's application for interlocutory appeal followed.

■ A. *The "Motion to Reconsider."* Do we still recognize a "motion to reconsider" or has this motion become extinct under present-day procedural rules? Lagle argues that such a motion is still viable. Iowa Electric, on the other hand, argues that all motions predating the rules of civil procedure, including the motion to reconsider, have either been merged into the present procedural rules or abolished. Therefore, because there is no rule expressly providing for a motion to reconsider, Lagle's motion must survive, if at all, as a motion under Iowa Rule of Civil Procedure 179(b) (enlargement or amendment of judgment or decree) or rule 252 (vacation or modification of final judgment or order). Iowa Electric argues that neither of these motions would be appropriate.

The label attached to a motion is not determinative of its legal significance; we will look to its content to determine its real nature. *See, e.g., Peoples Trust & Sav. Bank v. Baird,* 346 N.W.2d 1, 2 (Iowa 1984) ("motion for rehearing," while not expressly recognized by our rules, will be considered as a rule 179(b) motion); *Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224, 226 (Iowa 1979) ("motion to reconsider" considered as rule 179(b) motion).

Iowa Electric argues that, even if Lagle's motion is considered to be one under rule 179(b), it was error for the court to grant it, because that rule may not be used to challenge a partial summary judgment. *See City of Eldridge v. Caterpillar Tractor Co.,* 270 N.W.2d 637, 640–41 (Iowa 1978) (Rule 179(b) motions are available only for expansion or amendment of judgment when the court is "trying an issue of fact without a jury." In summary judgment cases, the court only determines

whether issues of material fact exist.) *See also Kunau v. Miller*, 328 N.W.2d 529, 530 (Iowa 1983) (rule 179(b) motion unavailable to challenge ruling on motion to dismiss for failure to state claim, because no issue of fact is raised in such motion); *Budde v. City Dev. Bd.*, 276 N.W.2d 846, 851 (Iowa 1979) (rule 179(b) motion inappropriate to challenge ruling based solely on questions of law). Moreover, Iowa Electric claims, Lagle's motion could not be considered as a rule 252 motion, because the partial summary judgment was not a "final judgment or order."

■ It appears that Iowa Electric is correct in arguing that rules 179(b) and 252 are inapplicable. But, if that is so, and a motion to reconsider has no independent validity, it appears that the only review open to Lagle would have been án application for interlocutory appeal to our court or an appeal from a final judgment at the conclusion of the case.

■ We do not believe that Lagle's options were so limited. A district court's power to correct its own perceived errors has always been recognized by this court, as long as the court has jurisdiction of the case and the parties involved. A motion to reconsider is found in our cases at least as far back as *Townsend v. Wisner*, 62 Iowa 672, 18 N.W. 304 (1884). And, while this motion is not expressly found in our rules of civil procedure, it is still recognized by our cases. *See, e.g., Hayes v. Kerns*, 387 N.W.2d 302 (Iowa 1986). For instance, in *Hayes*, we held

> that as long as the case is before us we may reexamine our jurisdiction in light of further study and oral submission of the case. This holding is consistent with the rule in the trial court that provides, "[u]ntil...a final order or a decree [is] rendered, the trial court will have the power to correct any of the rulings, orders, or *partial summary judgments* it has already entered."

ed). *See also Mason City Prod. Credit Ass'n v. Van Duzer*, 376 N.W.2d 882, 885 (Iowa 1985) (until trial is completed and final order rendered, trial court has power to correct any of its rulings, orders, or

partial summary judgments). Consistent with these authorities, we hold that a motion to reconsider may properly be granted prior to final judgment.

Based on these authorities, the district court correctly reconsidered its prior order. Both the case and affected parties remained subject to the court's jurisdiction.

■ B. *The Jury Demand.* Iowa Rule of Civil Procedure 177(b) provides in part:

> A party desiring jury trial of an issue must make written demand therefor by filing a separate instrument clearly designating such demand not later than ten days after the last pleading directed to that issue.

Lagle had not demanded a jury trial on the original issues raised in Iowa Electric's petition. Several months later, however, when she filed her counterclaim, she demanded a jury trial on *all* issues, including those originally raised by the petition. Her right to demand a jury trial on the original issues, of course, had expired because more than ten days had elapsed since the answer. Nevertheless, the court ordered a jury trial on those issues as well as the new ones raised by Lagle's counterclaim. Iowa Electric contends this was error.

Iowa Rule of Civil Procedure 177(d) provides considerable discretion in such a case:

> Notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made of right, the court, in its discretion on motion and for good cause shown, but not ex parte, and upon such terms as the court prescribes, may order a trial by jury of any or all issues.

We find no abuse of that discretion. The district court apparently concluded that, if the new issues were to be tried to a jury, they should all be tried that way.

II. *The Preclusion Issue.*

■ Lagle's two letters to the board protesting Iowa Electric's bill were treated by the board as informal complaints under its administrative rules. The board's responses to Lagle's letters informed her that it could do nothing for her but, if she was not

satisfied with this disposition, she could file a formal complaint with the board. Information concerning the procedures for filing a formal complaint was enclosed in the board's correspondence with Lagle.

Lagle did not file a formal proceeding. When Iowa Electric sued her for her bill, however, she filed a counterclaim and reasserted her complaints. Her counterclaim sought damages for emotional distress and loss of profits from her business, as well as "embarrassment and humiliation and other damages."

Iowa Electric argues that, because the board had resolved similar issues against Lagle on her informal complaints, she is barred by principles of issue preclusion from raising similar issues in her counterclaim. Lagle counters that the proceedings before the board were too informal to be preclusive, that the necessary identity of issues was missing, and applying issue preclusion on the basis of the informal disposition by the board would effectively deprive her of any meaningful hearing on her claims because she had not had a formal complaint proceeding before the board.

 Issue preclusion, also called collateral estoppel, prevents relitigation of already litigated factual issues which were essential to an earlier judgment on a different cause of action binding the same parties. Pershbacher, *Rethinking Collateral Estoppel: Limiting the Preclusive Effect of Administrative Determinations in Judicial Proceedings*, 35 U.Fla.L.Rev. 422, 424 (1983) [hereinafter Pershbacher]. Claim preclusion, on the other hand, prevents relitigation of all issues, whether raised or not, following judgment on the same cause of action. *Id.; see also id.* n. 8, at 423.

The parties agree that the question here is one of issue, not claim, preclusion. *Hunter v. City of Des Moines,* 300 N.W.2d 121 (Iowa 1981), sets forth the elements of issue preclusion:

> Before issue preclusion may now be employed in any case, these four prerequisites must be established: (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.* at 123 (citing *Bertran v. Glen Falls Ins. Co.,* 232 N.W.2d 527, 533 (Iowa 1975)).

Application of the second test is dispositive here, that is, whether the issue sought to be precluded was actually "litigated" or "adjudicated" in the board proceedings. We have held that agency action may be adjudicatory if the agency determines an individual's rights, duties, and obligations created by past transactions or occurrences. *See Polk County v. Iowa State Appeal Bd.,* 330 N.W.2d 267, 277 (Iowa 1983). The Restatement provides this, in part, with respect to the preclusive effects to be given to agency determinations:

> 2. An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:
>
> a. Adequate notice to persons who are to be bound by the adjudication ...;
>
> b. The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
>
> c. A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;
>
> d. A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and
>
> e. Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the par-

ties to obtain evidence and formulate legal contentions.

Restatement (Second) of Judgments § 83 (1982).

Another authority suggests, for several reasons, a narrow application of issue preclusion in administrative proceedings. Pershbacher at 451, 453–54, 457–58. The problem with according broad preclusive effect to administrative determinations is said to be that

> [r]esolution of a dispute does not require formal court-like proceedings, and informality is considered a virtue of most administrative proceedings. When, however, collateral estoppel effect is given issue determinations made in an administrative proceeding, informality becomes a problem. Judicial proceedings operate within a system where each issue resolved is subject to appellate review. Parties develop the crucial issues, introduce the important evidence, and have an independent fact finder resolve legal and evidentiary conflicts. The reviewability of this process ensures clear and careful issue resolution.
>
> Administrative proceedings are not structured with the same goals in mind as those of formal court-like proceedings, especially with regard to issue determinations.

*Id.* at 452.

Applying the Restatement test, Lagle did not have a hearing with the board through which she could "present evidence and legal argument in support of [her] contentions and [a] fair opportunity to rebut evidence and argument by [Iowa Electric]." Restatement (Second) of Judgments § 83(2)(b) (1982). Iowa Electric counters that, although Lagle did not have a hearing before the board, she could have filed formal proceedings and had such a hearing. By choosing not to request formal proceedings, Lagle waived the right to such a hearing, and she must be treated, for issue preclusion purposes, as if she had actually had a hearing. *See Pershbacher* at 458.

In this regard, we note that, while the board's administrative rules purport to give the right to formal proceedings on the request of a complaining customer, the statute establishing the complaint procedure does not. Iowa Code section 476.3 provides only for the board or the Office of Consumer Advocate to initiate formal proceedings.

We conclude that, in this case, the necessary prerequisites for issue preclusion have not been established. While issue preclusion may arise through meaningful administrative proceedings, we do not have such a case here.

■ Iowa Electric raises a related issue, that the board has exclusive jurisdiction in such matters, citing *Mid–Iowa Community Action v. Commerce Commission,* 421 N.W.2d 899 (Iowa 1988). Iowa Electric contends that our earlier case of *Oliver v. Iowa Power & Light Co.,* 183 N.W.2d 687 (Iowa 1971), which held the contrary, has now been overruled by *Mid–Iowa.*

We do not agree. As it was made clear in *Oliver,* there are two general types of cases concerning utility charges, and the initial jurisdiction as to each is different. In one type of case, the customer complains about alleged overcharges but does not claim that the rates were unreasonable. For example, the claim might be that the meter was misread or the charge exceeded the filed tariff. This type of case, we noted, is properly resolved by the courts. *Oliver,* 183 N.W.2d at 689.

In the second type of case, a customer seeks to recover overcharges on the ground that the utility company's rates were unreasonable or complains on other technical-type grounds. In that case, the customer must proceed before the appropriate board to have reasonable rates assessed. *Id.*

It is clear that *Mid–Iowa* did not overrule *Oliver. Mid–Iowa* involved questions of the second type discussed above, those which turn on the expertise of the board because they involved imposition of civil penalties. *Mid–Iowa,* 421 N.W.2d at 900. In that case, jurisdiction is properly placed in the board. *Oliver,* 183 N.W.2d at 689.

In *Mid–Iowa,* we said that it was "illogical" to suggest that the board may determine the amount of refund due a customer

but require the customer to file a separate action in court to effect recovery. *Id.* at 901. In the present case, an illogical result would also apply if Lagle were required to abandon her counterclaim in district court and pursue an independent claim through an agency action.

We believe that the district court and the court of appeals were correct in their procedural rulings and in denying preclusive effect to the action of the board.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.