# VIRGIN ISLANDS WATER AND POWER AUTHORITY, Plaintiff
## v.
# ZULMA HODGE, Defendant

Civ. No. 187/1992

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

December 9, 1996

CATHY M. SMITH, ESQ., (Deputy General Counsel), St. Thomas, U.S.V.I., *for Plaintiff*

DESMOND MAYNARD, ESQ., (LAW OFFICES OF DESMOND L. MAYNARD), St. Thomas, U.S.V.I., *for Defendant*

MEYERS, *Judge*

### MEMORANDUM OPINION

THIS MATTER is before the Court on the Virgin Islands Water and Power Authority's ("WAPA") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court is called upon to determine whether Zulma Hodge ("Hodge") is collaterally estopped from contesting this action based on a previous Virgin Islands Public Services Commission ("PSC") ruling. For the reasons presented below, this Court holds that the PSC lacked the requisite jurisdiction to hear the dispute; therefore, WAPA's motion for summary judgment will be denied, and this matter will be remanded to the PSC for appropriate action.

40

## FACTS AND PROCEDURAL POSTURE

In August of 1984, Hodge applied for and received potable water service for her twelve unit apartment complex at No. 10 Nordsidevej, St. Thomas. From 1985 to late 1987, Hodge's water bill averaged between $351.00 to $381.00 per month. However, in December 1987, Hodge's water bill increased to an average of $3,648.00 per month. The substantial increase (approximately 1,000%) coincided with WAPA's takeover of the management of the potable water system.

Hodge checked the apartment complex for leaks or defects in the plumbing system. She even hired a Civil and Environmental Engineer to review her billing statements. The engineering assessment pointed to WAPA utilizing improper water billing multipliers in calculating Hodge's water bill. However, WAPA insisted its billing calculations were accurate.

Hodge could not keep up with her monthly water bills thereby amassing a huge balance of $21,112.00.[1] Eventually, WAPA ceased to provide water to Hodge's apartments, and Hodge asked WAPA to remove its water meter from her property. Hodge resorted to trucking water to her apartments in order to supply her tenants with water.

In April of 1991, Hodge filed a complaint against WAPA with the PSC. In her complaint, she specifically alleged that WAPA used overbilling practices when calculating her water bill. Upon initial review of the case, the then Executive Director of the PSC, Patrick Rice ("Director"), rendered a decision against Hodge. On November 7, 1991, Hodge filed an appeal and requested that her case be heard by the PSC. The PSC held a hearing on December 20, 1991, without Hodge being present and affirmed the Executive Director's decision. The PSC forwarded its decision to Hodge on January 2, 1992, and advised her of her right to have the decision reconsidered. However, Hodge failed to submit a petition for reconsideration of the PSC's decision. Since Hodge refused to pay her water bill, WAPA filed this instant action for debt.

---

[1] The parties reached this balance when WAPA credited Hodge's water account with $14,636.16.

**DISCUSSION**

**I.**

■ The Court need not address WAPA's motion for summary judgment since the PSC did not have jurisdiction to entertain this case.[2] The V.I. Code Ann. tit. 30, § 2 (1965) defines the standard which governs public utilities in the Virgin Islands. The pertinent part of the statute provides:

> Every public utility doing business within the Virgin Islands is required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable. The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished, or rendered, shall be reasonable, just and nondiscriminatory. Every unjust or unreasonable or discriminatory charge for such facility or service is prohibited and is hereby declared unlawful. Every public utility is hereby required to obey the lawful orders of the Commission.

Additionally, V.I. Code Ann. tit. 30, § 20 (1965) defines the boundaries under which the PSC may investigate utility companies. The relevant part of the statute provides:

> Upon its own initiative or upon reasonable complaint made against any public utility that any of the rates, tolls, charges, or schedules, or services, or time and conditions of payment, or any joint rate or rates, schedules, or services, are in any respect unreasonable or unjustly discriminatory, or any service in connection therewith, is in any respect unreasonable, insufficient, or unjustly discriminatory, or that any service is inadequate or cannot be obtained, the Commission may, in its discretion, proceed, with or without notice, to make such investigation as it may deem necessary or convenient . . . .

Noteworthy, the statute does not enable the PSC to investigate utility companies for inaccurate billing. Hodge filed a complaint

---

[2]Neither Plaintiff nor Defendant raised the issue of jurisdiction in its brief.

with PSC alleging that her utility bills were incorrect and that her water meter was possibly giving false readings. (*See* Letters to Patrick Rice dated 4/11/91 and 11/7/91). Hodge did not allege that her rates, service, or time and conditions of payment were unreasonable or unjustly discriminatory. She merely alleged that her bills were inaccurate. Additionally, WAPA's complaint supports the contention that the character of this dispute is merely one for the payment of monies purportedly owed to WAPA. The compliant did not address the issues of unreasonable fees and services. Therefore, the PSC should have declined to hear this case.

The facts of this case bear a striking resemblance to those of *Iowa Elec. Light and Power Co. v. Ladle*, 430 N.W. 2d 393 (Iowa 1988). In *Iowa Elec. Light and Power Co.*, the Iowa State Supreme Court was confronted with a similar jurisdictional issue. The facts are written verbatim and are as follows:

> Electric service to Martha Ladle's retail shop was disconnected by Iowa Electric Light & Power Company for nonpayment of her bill. She protested to the Iowa State Commerce Commission (now known as the Iowa Utilities Board), claiming there must have been a company error, because her meter readings had suddenly gone berserk. (It turned out that another tenant in the building who was on the same meter had abandoned the premises, leaving walk-in cooler doors open.)
>
> The Iowa Utilities Board (board) processed her complaint on an informal basis and advised her that any power loss was on her side of the meter, and therefore was her responsibility. The board advised her, also, that if she was dissatisfied with this disposition, she could initiate formal complaint proceedings before the board. She wrote a second letter but did not initiate a formal complaint. Later, when Iowa Electric sued Ladle for her unpaid bill, she counterclaimed for damages resulting from the utility company's alleged negligence.

*Iowa Elec. Light and Power*, 430 N.W. 2d at 394-395.

Iowa Electric argued that the Iowa Utilities Board had jurisdiction over the matter. *Id.* at 398. However, the court disagreed. *Id.*

43

Further, the court distinguished a complaint properly brought before the Iowa Utilities Board from one being brought before the court. In support of its reasoning, the court further stated:

> [T]here are two general types of cases concerning utility charges, and the initial jurisdiction as to each is different. In one type of case, the customer complains about alleged overcharges but does not claim that the rates were unreasonable. For example, the claim might be that the meter was misread or the charge exceeded the filed tariff. This type of case, we noted, is properly resolved by the courts . . . . In the second type of case, a customer seeks to recover overcharges on the ground that the utility company's rates were unreasonable or complains on other technical-type grounds. In that case, the customer must proceed before the appropriate board to have reasonable rates assessed.

*Id.* at 398. (citations omitted).

The court also finds support for its position in the case of *Rosa v. Virgin Islands Water and Power Authority*, 32 V.I. 89 (Terr. Ct. 1995). In *Rosa*, the court was presented with what appears to be a similar billing dispute. Importantly, the court concluded that the PSC lacked the requisite jurisdiction to hear the complaint. The court stated:

> Although the P.S.C. has the power to investigate and correct the services provided by WAPA, plaintiff's complaint does not present a dispute about WAPA's services. Rather plaintiff alleges that WAPA made an error in billing her for water and she seeks an accounting and refund of those sums. Plaintiff's action is properly before this Court and neither WAPA nor the P.S.C. have established that the Legislature gave jurisdiction to the PSC to handle this type of matter . . . .

*Id.* at 93. This Court finds the holdings in *Iowa Elec. Light and Power Co.* and *Rosa* to be very persuasive and controlling. In light of the foregoing, this Court holds that the PSC lacked the requisite jurisdiction to entertain Hodge's complaint. Accordingly, Hodge's

44

complaint will be remanded to the PSC with instructions to dismiss for lack of jurisdiction.[3]

## CONCLUSION

For the foregoing reasons, WAPA's motion for summary judgment will be denied. The Court concludes that the PSC exceeded its jurisdictional bounds since the issue involves inaccurate rates. Therefore, this dispute must be remanded to the PSC and summarily dismissed by that agency. An appropriate order will be entered.

DATED this 9th day of December, 1996

## ORDER

In accordance with the Memorandum Opinion of even date, it is

ORDERED that the Virgin Islands Water and Power Authority's Motion for Summary Judgment be and the same is hereby DENIED; and it is further

ORDERED that this dispute is REMANDED to the Virgin Islands Public Services Commission for DISMISSAL for lack of subject matter jurisdiction; and it is further

ORDERED that copies of this Order shall be directed to counsel of record.

DATED this 9th day of December, 1996.

---

[3] The WAPA/Hodge dispute will be decided by this Court after a trial on the merits.